[No. 2525. Decided June 18, 1897.]

THE PIONEER SAVINGS AND LOAN COMPANY, *Appellant,*
v. THE PROVIDENCE WASHINGTON INSURANCE COMPANY, *Respondent.*

INSURANCE — BREACH OF CONDITIONS — CHANGE OF OWNERSHIP — RIGHTS OF MORTGAGEES.

A policy of fire insurance issued to a mortgagee will not be invalidated by failure to notify the insurer of a change of ownership, as required by the policy, where such change occurs between the time of application of, and the issuance of, the policy.

Where, pending foreclosure proceedings, a deed of the mortgaged premises is delivered to the mortgagee upon the agreement between the parties that title should pass to the mortgagee only on condition that the title be approved by its attorneys and that the foreclosure suit be dismissed and the mortgage debt satisfied, the mortgagee is entitled to treat the mortgage as in full force until the dismissal of the suit and satisfaction of the debt; and, in case of a loss by fire between the delivery of the deed and satisfaction of the debt, under a policy providing for payment to the mortgagee as its interest may appear, the right of the mortgagee to recover as mortgagee remains unimpaired, although the policy may provide that a change in ownership without notice to the insurer would invalidate the policy.

Appeal from Superior Court, Spokane County.—Hon. NORMAN BUCK, Judge.   Reversed.

*Mark F. Mendenhall*, for appellant.
*Graves, Wolf & Graves*, for respondent.

The opinion of the court was delivered by

REAVIS, J.—Action at law to recover on a fire insurance policy.   The plaintiff procured a policy of insurance from the defendant against loss by fire in the amount of $1,500, upon a store building in the town of Post Falls, Idaho. The policy ran directly to Celinda Newsom, and the contract of insurance was for the term of one year from the 30th of August, 1893, at noon, to the 30th of August, 1894, against all direct loss or damage by. fire.   The application for the insurance was made by the plaintiff as mortgagee of the property owned then by Celinda Newsom and her husband.   It contained the stipulation, " Loss, if any, payable to [the plaintiff named] as mortgagee or trustee per mortgage clause attached," which mortgage clause contained, among other things, the following provisions:

" It is hereby agreed that this insurance, as to the interests of the above named mortgagee or beneficiary in the trust deed only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupancy of the premises for purposes more hazardous than are permitted by the terms of this policy, nor by any change in title or possession, whether by legal process, voluntary transfer, or conveyance of the premises.   Provided, that the mortgagee or beneficiary shall notify this company of any change of ownership, or increase of hazard which shall come to the knowledge of said mortgagee or beneficiary, and shall have permission for such change of ownership, or such increased hazard, duly endorsed on this policy."

On October 1, 1893, the buildings were totally destroyed by fire. Notice was given and tender of proof of loss made by the plaintiff to the defendant within seasonable time thereafter, and claim for payment of loss. Defendant denied all liability under its contract of insurance, and plaintiff began this action. At the trial of the cause, objection was interposed by defendant to the introduction of testimony because the complaint did not state facts sufficient to constitute a cause of action. The court sustained this objection and, upon motion of defendant, directed the jury to return a verdict in favor of the defendant, and entered judgment thereon. Previous to the trial a general demurrer had been interposed by defendant to the complaint and overruled by the court.

It will be observed that the question presented here is upon the sufficiency of the pleadings by the plaintiff. The complaint sets out the corporate capacity of the plaintiff and the defendant; and that Newsom and wife were the owners of the property covered by the policy of insurance, and as such owners executed and delivered a mortgage of $1,800 to the plaintiff for a valuable consideration; and that the mortgagors agreed to keep the premises insured against loss by fire, and the policy to have a mortgage clause attached, with the loss, if any, payable to plaintiff; and that in case of failure of the mortgagors to keep up the insurance, then the mortgagee to take out the insurance and pay the premiums, and the mortgage was to be security for the premiums paid; that for a breach of the conditions of the mortgage, plaintiff commenced a foreclosure suit about the 2d day of August, 1893, in the district court of Kootenai county, Idaho, and immediately served the defendant with summons; that during the pendency of the foreclosure suit, about August 28, 1893, Newsom and wife made, executed, acknowledged and delivered their deed, thereby

12—17 WASH.

intending to convey the mortgaged premises to plaintiff; and at the same time it was expressly understood between defendants Newsom and plaintiff that title should pass to plaintiff only on the condition that said title be approved by plaintiff's attorneys, and upon the further condition that the foreclosure suit be dismised and the mortgage debt satisfied and discharged by plaintiff as against Newsom and wife; that about the 21st of September, 1893, plaintiff's attorneys, on behalf of the plaintiff, filed a motion in the Idaho court to dismiss the foreclosure suit, and that the motion to dismiss the suit was heard and order of dismissal thereon entered by the court on the 6th of November, 1893; that during the pendency of the foreclosure suit, in accordance with the provisions of the mortgage, plaintiff, upon the —— day of August, 1893, at Minneapolis, Minnesota, applied for and procured from defendant insurance on the premises and paid the premium of $67.50 therefor; and that defendant by its agents duly authorized thereto, on August 30, 1893, at Spokane, Washington, made the policy of insurance in writing and insured the premises as the property of Celinda Newsom in the sum of $1,500 against loss by fire. After the demurrer was overruled, defendant answered, in substance denying information sufficient to form a belief as to the formal matters alleged in the complaint, and affirmatively alleging that at no time prior to the date of the fire did the plaintiff or Newsom or wife, or any other party, notify defendant of any change of ownership which had come to the knowledge of either of the parties. Nor did plaintiff obtain permission for such change of ownership, or obtain permission for the execution of the deed from Newsom and wife to plaintiff, or concerning the approval of the title of the mortgaged premises or concerning the pendency or dismissal of the foreclosure suit; and that at the time of the

fire, and when the policy of insurance was made, plaintiff was the owner in fee simple of the mortgaged premises. The answer further alleges that the policy described in the complaint contained the following covenant:

" That said policy should be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of the ownership of the insurance be a building on ground not owned by the insured in fee simple, or if any change other than by the death of the insured should take place in the interest, title or possession of the subject of the insurance whether by legal process or judgment, or by voluntary act of the insured or otherwise."

Plaintiff replied, denying the absolute sale by Newsom and wife to it on August 28th, and also alleging that plaintiff's officers could not notify the defendant of the settlement of the foreclosure suit, and that notice was given of the pendency of the foreclosure; alleging that, by reason of the necessary lapse of time in procuring the abstract of title and in approving said title, and the time necessarily consumed by the transmission of the United States mails to and from the city of Minneapolis, plaintiff's officers could not and did not have any notice or knowledge of the foreclosure suit at the time of making application for the policy of insurance, or at the time of the fire; and the plaintiff also alleges that it notified defendant of the pendency of the foreclosure suit and defendant issued the policy of insurance with full notice and knowledge of the suit.

Besides the covenant above mentioned in defendant's answer relative to the ownership of the property, which was in the policy, there was also another stipulation as follows:

" If with the consent of this company an interest under this policy shall exist in favor of a mortgagee or of any

person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such insurance as shall be written upon, attached or appended hereto."

1. Plaintiff, under the terms of its mortgage, when the mortgagors had failed to procure insurance for the buildings on the mortgaged premises, applied to defendant, a Minnesota corporation in Minneapolis, for a fire insurance policy, as a mortgagee, and paid the premium at the time of $67.50. The policy was forwarded to be countersigned at the agency of defendant at Spokane, Washington. The allegation of the complaint is that this application was made and the premium paid on the —— day of August, 1893. We think it may reasonably be inferred that the premium was paid upon the application made at Minneapolis at least three days before the policy was delivered at Spokane. At the time the application was made Newsom and wife, the mortgagors, were the owners of the premises insured. If, as maintained by the defendant, the presumption exists that plaintiff made a representation of the title in its application for insurance to defendant, then such statement of title was at that time true. In contemplation of both parties the premises were mortgaged and a mortgage foreclosure might be made and a change of title occur, and in such change of title plaintiff, mortgagee, might become the owner. Indeed, the contract of insurance with the plaintiff, the mortgagee, provided that no change of title or possession, etc., should affect the contract.

We believe the rule supported by the better authority is that the contract of insurance with a mortgagee by an insurance company is a separate, distinct contract from that of the owner of the property, and that it is in contemplation between the parties to the contract that a change of title

may occur and that a third person or the mortgagee may become the owner, and that the ordinary stipulation, in insurance policies in such contracts, that the mortgagee shall notify the insurance company of a change of title, is one not a substantive part of the contract, for violation of which a forfeiture will lie, but is simply a subsequent breach of the contract for which damages may lie if the insurance company is injured. Such being the rule we would have no difficulty in adjudging the defendant liable for the loss if, after the delivery of the policy, such change of title had occurred, although defendant was without notice of the same. But the change of title in the case at bar evidently occurred in the interval between the application and payment of premium at Minneapolis and the delivery of the policy to the plaintiff at Spokane.

May on Insurance (vol. 1, § 276 c), discussing foreclosure, says:

"If, however, the policy expressly provides that the *commencement* of foreclosure proceedings shall avoid it, the condition will be enforced. But where an application truly stated that no foreclosure proceedings had been begun and the policy stipulated that the commencement of any foreclosure proceedings shall immediately render this policy void, and no such proceedings were begun *after* the policy was issued, but there were such begun *between* the date of the application and the date of the policy, it was held that the company was bound, and the policy was not forfeited. The insurer must stipulate for the intervening period if he would cover it."

This question has also been directly before the supreme court of Iowa in a case in which the facts are very similar to those in the one now under consideration. In that case the application for insurance was made February 23d, and stated that no proceedings had been commenced to enforce a mortgage on the property, which statement was true at

that time.   The application also provided that no liability
should attach until it should be approved by the company.
It was approved and the policy issued March 3.   The pol-
icy provided that the commencement of foreclosure pro-
ceedings against the property should render it void.   Fore-
closure proceedings were in fact begun between the dates
of the application and the issuance of the policy, and the
court held that the policy was not void because of such
foreclosure proceedings.   The court said:

"Upon the 3d of March it relied upon what the insured
said about the property on the 23d of February.   The com-
pany knew that the condition of the property was liable
to change in the interval, and employed no means to inform
itself.   We think it took its own risk in regard to such
change.   When it issued its policy on the 3d day of March,
it seems to us that it undertook to insure the property as it
then was.   We do not think the policy can be understood
as meaning that foreclosure proceedings commenced before
that time would render the policy void.   No one can read
the provision against the commencement of foreclosure
proceedings without being impressed that it was designed
to provide merely for the future." *Day v. Hawkeye Ins.
Co.*, 72 Iowa, 597 (34 N. W. 435).

This court in the case of *Dooly v. Hanover Fire Ins. Co.*,
16 Wash. 155 (47 Pac. 507), held that a policy of insur-
ance, containing a stipulation similar to the one in the case
at bar—that if the ownership was not sole, unconditional
ownership in fee, it was void—and where at the time the
policy was written and delivered the insured was not such
owner and where the insurance company had no knowledge
of the title and no false representations had been made by
the insured, was not vitiated.   In effect, it was decided that
the insurance company must inquire or inform itself about
the title or else it will not be material.   In the policy before
us, as usual in fire insurance policies, there are numerous

printed stipulations in large and small type, and that they are not always closely noticed by either the insurer or the insured is obvious from a reading of this policy. The stipulation that exists in the printed portion of this policy, " or if any change other than by the death of the insured should take place in the interest, title or possession of the subject of the insurance, whether by legal process or judgment, or by voluntary act of the insured, or otherwise," was not eliminated by the defendant or its agents when they delivered the policy, yet it is absolutely inconsistent with the contract which it specially made with the plaintiff as mortgagee and which was attached to the policy, the latter contract stipulating that such changes should not vitiate the policy. This illustration is mentioned that it may be seen, when the strictness of a forfeiture is claimed by the insurance company because of a stipulation, perhaps first noticed by the insured after loss, it will be closely scrutinized before forfeiture is declared. Nothing will be inferred in favor of the forfeiture.

2. But another phase of the contention for a forfeiture of the contract by the defendant may here be examined. It is true that the execution and delivery of a deed by grantor to grantee estops the grantor from afterwards setting up a conditional delivery or qualifying it in any way. This rule has its reason, which is that in so important a matter as the conveyance of title to real estate the door for the introduction of parol testimony to contradict the delivery of a deed, when once made, will not be opened. But this estoppel upon the grantor does not always conclude the grantee. The plaintiff here was the mortgagee. It did not agree to and did not in fact dismiss the foreclosure proceeding or satisfy the mortgage until after the loss occurred by fire. The rule is that a mortgagee taking a conveyance of the fee by a deed does not always and

necessarily merge the mortgage in the title, but on the contrary, if it is to the interest of the mortgagee to still maintain the mortgage, he may do so. It would be but an ordinary precaution, when a deed was tendered by the mortgagor, to examine the title before acceptance of the deed. There might be intervening incumbrances which would make it necessary to maintain the mortgage intact and conclude a foreclosure and derive title through a judicial sale rather than to retain the ownership by deed from the mortgagor. Evidently here it was to the interest of the plaintiff to maintain its mortgage after the loss by fire occurred, and it did so for some time, and if it were in any sense a mortgagee when the loss occurred, the liability of the defendant was at that date fixed, because its contract is to pay such loss as the mortgagee sustained and as its interest appeared. The defendant seems to have retained the $67.50 and refused to pay the loss under its contract of insurance.

In conformity to the views heretofore expressed, the judgment of the superior court is reversed and the cause remanded for a new trial.

SCOTT, C. J., and DUNBAR, GORDON and ANDERS, JJ., concur.