[No. 5817. Decided April 28, 1906.]

JACOB C. MANN, *Appellant,* v. THE PROVIDENT LIFE AND TRUST COMPANY *et al., Respondents.*[1]

APPEAL AND ERROR — FINDINGS — EXCEPTIONS — TIME FOR FILING. Where findings were filed without service upon the opposite party, written exceptions thereto, filed within five days after notice of the findings, are in time, and the exceptions and statement of facts will not be struck out.

MORTGAGES—REDEMPTION—EXTENSION OF PERIOD—INDEFINITE TIME —DELAY. Upon an agreement to extend the time for redeeming from a mortgage foreclosure, without any definite time being fixed, offer to redeem must be made in a reasonable time, and five and one-half years is not a reasonable time where valuable improvements have been made and the property has increased in value (ROOT and DUNBAR, JJ., dissenting).

MORTGAGES — REDEMPTION — AGREEMENT FOR EXTENSION — PAROL PROOF. Where the written agreement entered into pending the foreclosure of a mortgage makes no mention of any extension of the right of redemption, clear and satisfactory evidence must be produced of any parol agreement to that effect.

[1]Reported in 85 Pac. 56.

MORTGAGES—CONTRACT FOR REDEMPTION—ADDITIONAL SECURITY—
CONSIDERATION — CONSTRUCTION — EXTENSION OF PERIOD.   Where a
mortgagor, to secure further time, had placed certain valentine
scrip with the mortgagee as further security, an agreement pending
foreclosure of the mortgage to sell the scrip to the mortgagee at a
nominal consideration in return for an agreement to allow a re-
demption of both the real and personal property, is based upon a
valid consideration, inasmuch as there is no right to redeem the
scrip upon an execution sale; and the two instruments, one to sell
the scrip and the other to .resell the same in case the real estate
shall be previously redeemed, should be construed to effectuate such
a contract, and not as an indefinite extension of the time to redeem
both the real and personal property (ROOT and DUNBAR, JJ., dissent-
ing).

ACTIONS — PREMATURELY COMMENCED — OBJECTION WHEN TO BE
RAISED.   The objection that a foreclosure suit was prematurely com-
menced, cannot be first raised in a collateral action to obtain an
equitable redemption pursuant to an alleged agreement extending
the time therefor.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered April 15, 1905, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, in an action to enforce an equitable
redemption of property sold on mortgage foreclosure.   Af-
firmed.

*Allyn & Allyn* and *F. Campbell,* for appellant.

*E. R. York,* for respondents.

CROW, J.—On June 20, 1892, appellant obtained a loan
of $50,000 from the respondent The Provident Life and
Trust Company, and to secure the same, gave a mortgage
on certain real estate in the city of Tacoma.   The interest
on said note for the years 1894 to 1897, inclusive, was not
paid when due.   In 1894, appellant, being unable to meet
the taxes, interest and insurance, had a conversation with
Henry Longstreth, the western agent of said mortgagee, pur-
suant to which appellant deposited with him Valentine scrip
sufficient to locate one hundred and sixty acres of land.   Ap-
pellant claims that this scrip was given to secure a year's

extension upon the note and mortgage. Respondent denies this, but it is an admitted fact that the time was extended, ·in that no effort was made to foreclose or otherwise enforce payment during the succeeding year. In 1895 another transaction of the same kind took place, the appellant again depositing Valentine scrip. On January 17, 1898, appellant deposited with respondent more scrip, being all that he owned, which, together with that already deposited, was sufficient to locate six hundred and sixty-four acres. Appellant claims that, when this last deposit was made, the respondents agreed to extend the time upon said note and mortgage for another year. This is disputed by respondents.

On June 27, 1898, respondent company began a foreclosure suit on the note and mortgage. Appellant defaulted, and on September 12, 1898, a judgment was entered in the sum of $84,035.95. A day or two after the entry of the foreclosure decree, the appellant called upon respondent Longstreth for the purpose of making a sale of his interest in the Valentine scrip already deposited, and securing to himself the right to redeem. When first on the witness stand he gave his version of this interview with Longstreth, but upon being recalled afterwards explained his former statements, testifying as follows:

"I said to Mr. Longstreth two days before the contract was made when I called on him, 'Let me sell you the scrip for a nominal sum, giving me your contract to sell it back to me for a nominal sum, bidding the whole amount on the property, keeping it together, giving me time to redeem it.' Now, I don't know how I answered that question, but that is how I should have answered it."

Mr. Longstreth asked a day or two to think the matter over. Appellant called on him again, on September 15, 1898, at which time the following written instruments, drawn by Mr. Longstreth, were signed and delivered:

"Received Tacoma, Wash., Sept. 15, 1898, of Henry Longstreth one dollar in full payment for all my right, title and interest in eighteen pieces of Valentine scrip, as follows:

Nos. E57, E169, E214, E222, E224, E289, E291, E275, E300, E244, E273, E290, E124, E241, E274, E271, E114, and E111. (Signed) Jacob C. Mann."

"Tacoma, Sept. 15, 1898. For value received I hereby agree to transfer all my right, title and interest in certificates of Valentine scrip Nos. E57, E169, E214, E222, E224, E289, E291, E275, E300, E244, E273, E290, E124, E241, E274, E271, E114 and E111, being eighteen pieces in all, to Jacob C. Mann on payment of one dollar, provided lots one (1), two (2), seven (7), eight (8), nine (9) and ten (10) in block nine hundred and three (903), Tacoma, have been previously redeemed from the lien of the mortgage which we are foreclosing. Witness A. L. Andrews. (Signed) Henry Longstreth."

On October 15, 1898, the mortgaged real estate was sold under a special execution, and was purchased by the respondent company for the full amount of the judgment and costs, to wit: $84,970.35. This sale was confirmed on November 23, 1898. Respondent company as purchaser entered into possession of said real estate on said 15th day of October, 1898, without objection on the part of appellant. Such possession has been maintained by it or its successors ever since, and permanent improvements to the value of $170,000, in the shape of a six-story and basement brick store and office building, were made upon said real estate during the year 1903 by respondent, or by one David G. Alsop, who, it is claimed, was a successor in interest to the respondent company.

In April, 1904, appellant asked respondents for an accounting, and in September, 1904, made and served upon them a written demand that he be permitted to redeem both said scrip and the above described lots, that respondents furnish the appellant a statement of the amount necessary to make said redemption, and that respondents account for the rents collected. Respondents refused to comply with any of said demands. The lots involved herein were, at the time of the sheriff's sale, of the probable value of $60,000. The scrip

was then of the probable value of $15,000. Appellant began this action on September 12, 1904, as a proceeding in equity to compel respondents to make an accounting, and for permission to redeem the real estate and scrip upon ascertaining the amount due over and above the rents and profits collected by respondents.

The trial judge made findings of fact and conclusions of law favorable to respondents. One of said conclusions recites that, "No extension or agreement for extension, beyond the statutory period, of a right to redemption of the real property involved herein before the mortgage foreclosure sale was made by the defendants to plaintiffs." And another of said conclusions is as follows: "That plaintiff has failed to establish any right to equitable relief herein." And another recites that the defendants are entitled to a judgment and decree "that plaintiff recover nothing in this cause." A judgment and decree were accordingly made and entered, from which this appeal is taken.

Respondents have moved this court to strike the exceptions to the findings of fact upon the ground that said exceptions were not filed within five days from the time said findings were filed. A motion to strike the statement of facts is also made on the same ground. From the affidavits of appellant's attorney on file herein, which affidavits are undisputed, it appears that the findings of fact were signed by the trial judge, and filed at a time when appellant and his attorneys were not in court, and that the same were not served until after the five days had expired; that appellant's attorneys prepared and submitted to the trial judge and filed their exceptions to said findings within five days from the time the same were called to their attention and served upon them. Under these circumstances the motion to strike the exceptions and statement of facts must be denied.

It will be noticed that, in the bill of sale made by appellant to Longstreth, no consideration is mentioned excepting the nominal one of one dollar, and that in the agreement to resell,

made at the same time by Longstreth, the same consideration was mentioned, with the proviso that, as a condition precedent to redemption of the scrip, the mortgaged lots should have been previously redeemed from the lien of the mortgage then being foreclosed. Appellant claims that he made this bill of sale in consideration of an understanding and agreement with Longstreth that the period of redemption should be extended for a reasonable time beyond the statutory period of one year, and that he should now be permitted to pay up and redeem both the real estate and the scrip. This contention is disputed by respondents, who claim that the consideration for the bill of sale was the agreement of Longstreth, as agent of the trust company, to bid the full amount of the judgment for the real estate at the sale thereof, and to hold the scrip without selling it until the statutory period of one year for redeeming had expired, and permit it to be redeemed with the real estate, as one transaction, within the statutory period. The trial court, in part, made findings as follows:

"That plaintiff was at said various times unable to pay said moneys then due, and desired to secure further time for payment of same and to delay suit on said note and mortgage, and plaintiff at various times prior to, and on January 17, 1898, assigned, transferred and delivered to Henry Longstreth, as agent of said company, certain certificates of Valentine scrip, to be held as further and additional security for the payment of said note and mortgage, and in consideration thereof said company from time to time delayed suit on said note and mortgage.

"That thereafter, on October 15, 1898, the mortgaged property above described was duly sold by the sheriff of said Pierce county, under writ of special execution issued upon said judgment and decree, and said mortgaged property was bid in and purchased by said company at said sale for the sum of $84,970.35, being the full amount of said judgment and costs; and thereafter on November 23, 1898, said sale was duly confirmed by order of said court entered in said cause.

"That on September 15, 1898, after the entry of said judg-

ment and decree, said Jacob C. Mann sold and, by an instrument in writing bearing said date, transferred absolutely to Henry Longstreth all of said certificates of Valentine scrip which had been theretofore pledged as additional security to said mortgage debt, and in consideration thereof said Henry Longstreth, by an instrument in writing bearing same date, agreed to re-transfer all of said certificates of Valentine scrip to said Jacob C. Mann provided the real property described in said mortgage had been previously redeemed from the lien of said mortgage; but no agreement was made by or between the plaintiff and defendants or either of them to extend the time for the redemption of said real property from said mortgage debt beyond the statutory period, or for any time or at all."

We think these findings fully warranted by the evidence. If, however, appellant's contention that he gave the bill of sale in order to get an extension of time to redeem be accepted as correct, still the limit of that extension was not agreed upon, and such alleged extension would necessarily be held to have been for a reasonable period only. The question would then be presented as to whether appellant sought to redeem within a reasonable period. In determining this question, we would have to take into consideration the character of the indebtedness and of the property, and all the circumstances surrounding it and the parties. Upon so doing, we could not hold that appellant commenced this action to redeem within a reasonable time. He waited five and a half years before making any demand for an accounting, or indicating any intention to redeem, and he did not commence this action for an accounting and for permission to redeem until nearly six years after the sale of the property. In the meantime real estate had greatly increased in value, and respondents, relying upon the absolute title claimed by them, had in good faith expended $170,000 for permanent improvements. Were we to accept appellant's contention as to there being an extension of the time to redeem, even then the facts shown by the evidence would not be sufficient to entitle him

to redeem or to have an accounting as demanded in his complaint.

After making a careful examination of all the evidence, we fail to see how the trial court could have found any contract for an extension of the period of redemption for either a certain or an indefinite time. The written instruments above quoted fail to state any such agreement, and the appellant has failed to produce any clear or convincing evidence showing it to have been made by parol. While a right of redemption or an extension thereof may be founded on a parol agreement, and is not within the statute of frauds, still it should never be enforced unless clearly and satisfactorily proven. *Clark v. Renaker,* 14 Ky. Law 465, 20 S. W. 534.

"Where the period for redemption is either created or extended by contract, the owner of the land or other redemptioner must comply with the terms of the contract or lose his right to redeem. If the time for redemption is not fixed and certain, the right must be asserted within a reasonable time, or it will be considered waived." *Turpie v. Lowe,* 158 Ind. 314, 62 N. E. 484, 92 Am. St. 310.

It cannot be successfully contended that the appellant has asserted his alleged right within a reasonable time, yet the only theory upon which he can possibly recover in this action is that, by the terms of the receipt and contract of sale above set forth, and the terms of some further simultaneous parol agreement claimed to have been made between himself and Longstreth, he was given a reasonable extension of time running beyond the statutory period, within which to redeem not only the real estate but also the Valentine scrip. We think this theory cannot be sustained, and that it was rightfully rejected by the trial court, there being no evidence to show any such oral agreement. The written instruments alone cannot be intelligently construed as conferring any such rights upon appellant. We have above quoted a portion of his testimony, given after he returned to the witness stand, and was per-

mitted to explain.  Prior to that time on cross-examination he had testified in part as follows:

"Q.  You had no contract with Mr. Longstreth or with his company with regard to the redemption of this property other than shown in this agreement there, dated September 15th?  A. No, sir.  Q. That is the only agreement in regard to it?  A. Yes, sir."

On re-examination, conducted by his own attorney, he testified as follows:

"Q.  Now, you were asked, Mr. Mann, whether you had any other agreement with Mr. Longstreth than this plaintiff's Ex. C, dated September 15th, 1898, in relation to the extension of time.  A. Nothing.  Q. That is, you mean you had no other written agreement?  A. I had no other agreement.  Q. Had no other agreement?  A. None whatever. Q. When you say you had no other agreement, Mr. Mann, this contract, which you received here and this bill of sale which you made, was made by him and you in conformity to the request that you had made two days prior to that? A. Yes.  Q. That was part of the same contract, wasn't it? A. Yes, sir.  Q. There was a consideration for the making of this contract?  A. Well, they explain themselves.  Q. They do?  A. Yes.  Q. Isn't it a fact that you stated that there was no other agreement than that written agreement?  A. Sure, I so stated."

From this evidence, given by appellant himself, it appears that the only agreement between the parties was contained in the two written instruments.  We are, therefore, now called upon to determine his rights by construing these instruments in the light of the surrounding circumstances and facts which are not questioned.  There is no dispute that prior to the commencement of the foreclosure action, all of the Valentine scrip had been assigned to the respondent company as collateral security.  At the time of the foreclosure sale, the real estate as shown by the evidence, was not worth more than $60,000.  Although appellant placed a very high valuation upon the Valentine scrip, based upon prices which he had paid for it in the years 1888-9, when he and many

others erroneously supposed it could be used for securing title to tide lands, the undisputed evidence shows that, at the time of the sheriff's sale in 1898, it could not have been worth, at the highest estimate, more than $15,000. From this it follows that the combined market value of the real estate and scrip which the respondent company held as security at the date of its judgment and sale did not exceed $75,000, while its judgment was entered for more than $84,000. Appellant must have known that the respondent could issue an execution upon its foreclosure judgment and decree and first sell the real estate, even at its full value, for less than the face of its judgment, and could thereafter issue an alias execution upon its deficiency judgment and sell the Valentine scrip. After an execution sale of the Valentine scrip, which was personal property, there would have been no right of redemption whatever as to such scrip. If, however, appellant could succeed in effecting an arrangement with the respondents, by which they would make their entire bid for the real estate, and would also give him the privilege of redeeming the scrip within the statutory period of one year on condition that he also redeemed the real estate, he might thereby be enabled to recover back not only the real estate, but also the scrip, in the event of finding himself able to redeem within the statutory period, which he hoped to do and evidently anticipated that he might do. With this object in view, nothing would be more natural than for the parties to enter into just such an agreement as the one evidenced by the written receipt and bill of sale. Had the appellant then redeemed the real estate within the statutory period, he would also have been entitled to a return of the Valentine scrip not otherwise redeemable. This opportunity to recover the Valentine scrip in the event of redemption of the real estate was a right not guaranteed him by any existing statute, and constitutes a valuable consideration for his agreement to sell the scrip. Having failed to redeem the

real estate within the statutory period, he not only lost all interest in the real estate, but also in the scrip.

It seems to be conceded, and is a fact disclosed by the evidence, that at the time of the foreclosure and sale, a period of intense financial distress, causing a marked depression in property values, prevailed in this country. Although there is some evidence tending to show that during this period it was customary for the respondent company to bid the full amount of its judgments at its foreclosure sales, we would not be justified in assuming that, in the absence of the above written agreements, it would have done so in this case, where it not only held the real estate but also the scrip as security, and where their combined market value was considerably less than the face of its judgment. On the contrary, the most natural and business-like course for it to have adopted under existing conditions would have been to first bid in the real estate for a portion of its claim, and the scrip for the remainder, thus protecting itself as much as possible by acquiring title to all the property, both real and personal, which it held as security. The evident intention of the parties was not to extend the period of redemption indefinitely, but to relieve the respondent company from the necessity of proceeding in this manner for its protection, and at the same time to enable it to concede to appellant the right to redeem both the real estate and the scrip within one year, on the basis of the price bid for the real estate at the sheriff's sale. Any other theory would compel us to assume that the respondent company would, in the absence of any agreement, have necessarily bid the full amount of its judgment for the real estate alone, being $24,000 more than its market value, and by thus fully satisfying its judgment, place itself in a position where it would be compelled to release the scrip.

There is some contention made by appellant to the effect that the foreclosure suit was prematurely commenced. That question should have been raised and adjudicated in that cause. It cannot be considered in this collateral proceed-

ing. It is also contended by the appellant that he was not properly served with summons in the foreclosure suit. We have carefully examined the record of the foreclosure action, which is before us, and are of the opinion that a valid personal service was made upon him.

We find no error in the record, and the judgment of the superior court is affirmed.

Mount, C. J., Hadley, Fullerton, and Rudkin, JJ., concur.

Root, J. (dissenting)—I am unable to fully agree with the conclusion reached by the majority of the court. I think that appellant is entitled to relief in the matter of the Valentine scrip. This scrip was placed with respondents as additional security. Appellant was obliged to put it up as such collateral in order to prevent the foreclosure of the mortgage upon his real estate. He at length placed the last that he had of this scrip. According to the evidence, with the last scrip he had furnished the respondents with all the property he had in the world as security for this indebtedness; and he contends that the last deposit made was upon the understanding and agreement that the mortgage should not be foreclosed within a year from that time. Respondents claim that there was no such agreement and understanding. We think the condition and surrounding of the parties lend strong corroboration to the contention of the appellant in this particular. But respondent company begins this suit about five months after this last deposit of scrip was made, instead of waiting twelve months. After the decree of foreclosure had been entered, the bill of sale from appellant and the agreement to resell by Longstreth were executed. The oral testimony as to the purchase and consideration of this transaction is flatly contradictory—appellant giving his version and Longstreth giving that of himself and the company. Their oral negotiations having terminated in the written bill of sale and written agreement for resale, it follows that these documents must constitute the

best evidence of the intention of the parties. By an exami-
nation of said written agreement to resell, we find that it
opens with the recital "for value received, I hereby agree to
transfer . . . on payment of $1.00; provided lots one
[and the other mortgaged real estate] have been previously
redeemed of the lien of the mortgage which we are foreclos-
ing." An examination of the 6th finding of fact made by the
trial court shows that the court found that appellant made
the bill of sale of the Valentine scrip "and in consideration
thereof said Henry Longstreth, by an instrument in writing
bearing same date agreed to retransfer all of said certificate
of Valentine scrip to said Jacob C. Mann provided the real
property described in said mortgage had been previously re-
deemed from the lien of said mortgage;" but also found that
no agreement of extension of the time for redeeming the real
estate was made. Looking at these written instruments and
the finding of the trial court (which respondents are not in a
position to question) we are unable to see any valid or valu-
able consideration for the bill of sale of this scrip made by
appellant to Longstreth. The latter merely agreed to resell
the scrip upon the doing by appellant of a certain act which
would have entitled him to a return of this scrip regardless
of any agreement. The value of this scrip is and was uncer-
tain. It was shown to have cost appellant something over
$100 per acre, and was at one time probably of the value of
$150 per acre. At the time of the trial it was probably
worth at least $20 an acre, and perhaps much more. Ap-
pellant claims that, at the time of the first deposit made, it
was accepted by the respondent upon the basis of $100 per
acre. Appellant claims that this scrip was worth $75,000 at
the time of these deposits while respondents claim that it was
not worth more than from $12,000 to $15,000. In view of
the situation of these parties, having in mind the advantage
which respondents had over appellant, I am not disposed to

draw the lines closely against him. As the trust company, respondent, insists upon a strict compliance with its legal rights in the premises, it cannot complain if appellant is given the benefit of the same measure of construction. If the consideration for the bill of sale of this scrip and of the contract for resale was as contended for by respondents, it should have been expressed in those instruments. Instead of that, we find something entirely different. These two instruments constitute one transaction; and the purpose and intention of the parties thereto must be gathered from the written language employed in the light of surrounding undisputed circumstances. Courts, and especially courts of equity, should not apply a rigid rule of construction in favor of one party and against the other under like conditions. Neither should the rigor of the law be visited with severity upon the helpless debtor and palliated in favor of the creditor in a case where, at best, the debtor suffers great hardship while the creditor reaps a rich and abundant harvest in addition to the recovery of its loan, interest and costs.

Viewing the transaction regarding this bill of sale and contract for resale with the critical eye of the law or by the comprehensive vision of equity, I cannot find justification for the retention of this scrip by respondents. I think substantial justice would be done as between these parties if appellant receive the Valentine scrip which he deposited.

DUNBAR, J., concurs with ROOT, J.