MALVANEY, Appellant, *v.* YAGER, Executrix, et al., Respondents.

(No. 7,466.)

(Submitted January 11, 1936. Decided January 29, 1936.)

[54 Pac. (2d) 135.]

332

*Mr. W. B. Leavitt,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. George W. Farr,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Approximately a year and a half prior to November 7, 1931, the plaintiff, Everett C. Malvaney, borrowed $1,000 from the defendant Ed. Yager, and, as security for its repayment, executed and delivered to Yager a mortgage on his farm consisting of 320 acres of land entirely inclosed by a fence, and having thereon a frame dwelling-house and outbuildings, including three granaries. In addition to the real estate mortgage, Malvaney also executed and delivered to his creditor a chattel mortgage on his farm machinery and stock.

On November 30, 1931, at the instance of Malvaney, the Globe & Rutgers Fire Insurance Company, through its local agent at Miles City, issued a policy on the dwelling-house only, insuring it against loss or damage by fire up to $1,500. Attached to the policy is the usual mortgage clause providing that loss or damage, if any, is to be paid to Yager "as interest may appear"; that, subject to the conditions set forth in the rider "as to the interest of the mortgagee only," the policy shall not be invalidated by the negligence of the mortgagor, nor by foreclosure or other proceedings. The rider further provides that, if the mortgagor fails to pay the premium, the mortgagee covenants and agrees to do so, and that "whenever this Company shall pay any mortgagee * * * for loss or damage under this policy and shall claim that as to the mortgagor * * * no liability therefor exists, the Company shall, to the extent of such payment, be thereupon legally subrogated to all of the rights of the party to whom such payment shall be made, under all security of every kind for the debt secured by such mort-

gage.'' The premium on the policy was $36, of which the mortgagor paid $10 on securing the policy.

On December 4, 1931, Yager declared the debt wholly due and payable, under an acceleration clause in the mortgage, for nonpayment of the semi-annual interest due November 7, 1931, and thereupon commenced foreclosure proceedings on both the real estate and chattel mortgages. Malvaney notified the local agent of the insurance company of the proceeding, and that for that reason he would not pay the balance of the premium; on demand, Yager made the payment.

On January 15, 1932, Yager secured a default judgment against Malvaney for $1,189.93, a decree of foreclosure of the mortgages, and an order of sale of the real estate; the order was executed by the sheriff on February 11, 1932, by a sale of the property to Yager for $1,107. A certificate of sale was issued to Yager and a deficiency judgment of $100 entered against Malvaney.

As Malvaney occupied the premises as a home for himself and family, he remained in possession. On October 23, 1932, the house was totally destroyed by fire. Malvaney notified the local agent of the insurance company and the claim was referred to its adjuster at Billings, who, on investigation, allowed the claim for the full amount and assured Malvaney that it would be paid within a week or two. This assurance was not justified by the subsequent conduct of the company.

The period of redemption expired, and thereafter Malvaney commenced action against the insurance company, and, Yager having refused to join him, made Yager a party defendant, alleging that he is a necessary party by reason of the mortgage clause in the policy, but that his claim to any part of the insurance money has been extinguished, and he is not entitled thereto. The prayer of the complaint is for judgment against the insurance company, and that the claim of Yager, ''if any he has, in the amount recoverable under the policy, be determined,'' but that he be ''decreed'' to have no interest, and, if

he collects the amount pending suit, he be required to account for it and turn it over to the plaintiff.

After the commencement of the action Yager secured a sheriff's deed and appeared by answer and cross-complaint. In his answer he admits all of the allegations of the complaint, except that his rights were extinguished and that he had no claim to the money to be recovered. In his cross-complaint he repeats the allegations of the complaint, sets up his foreclosure proceeding, his purchase of the property, Malvaney's failure to redeem, the expiration of the period of redemption and the issuance to him of the sheriff's deed, and alleges that ever since such issuance he has been "and now is the sole and exclusive owner" of the premises. He alleges that he would not have bid the $1,107 for the premises if it had not been for the dwelling-house on the premises "and the insurance on said dwelling-house being in full force and effect with loss, if any, payable to the said Ed. Yager as interest may appear"; that Malvaney has no interest in the amount to be recovered, and the full amount should be paid to Yager.

Plaintiff's answer to the cross-complaint denies that Yager would not have purchased the premises at $1,107 if the house had not been thereon, and denies that Yager is the sole owner of the premises; alleges that the value of the premises is far greater than the Yager judgment; that "Yager has not offered and will not redeem the said land to the said * * * Malvaney in the event he should collect said insurance, but * * * intends and seeks to hold the said land and the entire proceeds of the said insurance policy, which in equity and good conscience he should not be and is not permitted to do." As a further answer to the cross-complaint the plaintiff alleges that, from the time he filed his claim with the insurance company, he has been prevented and precluded by Yager from collecting the insurance; that Yager assumed complete control of the negotiations and wrongfully informed the company that Malvaney had no interest in the policy or proceeds of the loss; that Yager "has not used any diligence or made any effort to collect and

negligently permitted the claim to remain uncollected until forced into this action." It is further alleged that the company made demand upon Yager for an assignment of his security who refused to make the assignment; that had this been done the loss would have been paid before the period of redemption had expired and the judgment paid in full, and plaintiff would have been in position to contest the company's right to the security. It is alleged, on information and belief, that Yager permitted the period of redemption to expire without attempting to collect from the company, in order to avoid a check or draft made jointly to him and Malvaney, and for the purpose of securing title to the land and then dealing directly with the insurance company. It is further alleged that during the period of redemption the plaintiff was insolvent and unable to redeem without the insurance money, which fact was known to Yager and the company, and that Yager "has not offered or indicated any willingness to release the insurance or any part thereof, or offered to redeem said land to the plaintiff upon the payment of said judgment from the proceeds of said insurance, or otherwise or to do equity"; that Yager has no right to retain the property, of a value in excess of his judgment and the proceeds of the insurance, also in excess of his judgment, and "should be and is barred and stopped from claiming and asserting any claim to said insurance money or any part thereof."

The prayer of the reply is that the cross-complaint be dismissed and that plaintiff have judgment in accordance with the prayer of the complaint. Yager died, and his executrix was substituted as cross-complainant.

The cause was tried to the court on the question as to whether, under the pleadings, Malvaney or Yager was entitled to a judgment against the insurance company and to the insurance money. On this question alone the court made and filed findings of fact and conclusions of law, and thereon rendered judgment in favor of Yager's estate. The insurance company has paid the amount of the judgment into court. The plaintiff has appealed from the judgment, and, by eighteen specifications of error, the last

338

of which is that "the findings and conclusions of the court are not complete, for the reason that they do not fully determine the issues involved," challenges the correctness of the court's findings, conclusions, and judgment.

In fairness to the learned trial judge, we must preface our discussion of the questions presented on this appeal by the declaration that, under the rather complicated law of the case made by the pleadings, the findings made, the conclusions of law reached, and the judgment are correct.

Where insurable property is mortgaged, in addition to the mortgageable interest of the owner, there is created a new mortgageable interest, the interest of the mortgagee in the property to the extent of his mortgage debt; this interest the mortgagee may insure without regard to the rights of the mortgagor. (*Thompson* v. *National Fire Ins. Co.*, 48 S. D. 224, 203 N. W. 464.) Likewise, the mortgagor may insure his interest without regard to that of the mortgagee, and, if he does so, his protection continues after foreclosure and throughout the period of redemption therefrom. (*Norwich Fire Ins. Co.* v. *Boomer*, 52 Ill. 442, 4 Am. Rep. 618.) However, when money is loaned on real estate security, it is customary to require the mortgagor to insure the improvements and, in the policy to, at least, provide that the loss, if any, be paid to the mortgagee as his interest shall appear. This provision but makes the mortgagee the appointee of the mortgagor to receive the insurance money (14 R. C. L. 1084, and cases cited), and the contract for indemnity remains one exclusively between the insurance company and the mortgagor. (*Collinsville Sav. Soc.* v. *Boston Ins. Co.*, 77 Conn. 676, 679, 60 Atl. 647, 69 L. R. A. 924.)

Under such a mortgage clause, if loss occurs while the mortgage is in full force and after the debt is due, the mortgagee is bound to collect the insurance money and apply it in full, or *pro tanto*, satisfaction of the debt, and such payment amounts to satisfaction of the mortgage to the extent of the payment (*Connecticut Mutual Life Ins. Co.* v. *Scammon*, 117 U. S. 634, 6 Sup. Ct. 889, 29 L. Ed. 1007; *Sisk* v. *Rapuano*, 94 Conn. 294,

108 Atl. 858, and note thereto in 11 A. L. R. 1295); and if the mortgage debt be not due at the time of loss and payment, the mortgagee shall hold the insurance money to discharge the debt or payments as they fall due. (*Thorp* v. *Croto,* 79 Vt. 390, 65 Atl. 562, 118 Am. St. Rep. 961, 9 Ann. Cas. 58, 10 L. R. A. (n. s.) 1166.)

But it is held that as a foreclosure of the mortgage extinguishes the mortgage debt and the mortgagee is but the appointee of the mortgagor, if loss is sustained after foreclosure, the mortgagee is not entitled to the insurance money, and payment must be made, if at all, to the mortgagor or someone representing his interest, and not to the mortgagee (*Stockton Nat. Bank* v. *Home Ins. Co.,* 106 Kan. 789, 189 Pac. 913, 11 A. L. R. 1304; *Reynolds* v. *London & Lancashire Fire Ins. Co.,* 128 Cal. 16, 60 Pac. 467, 469, 79 Am. St. Rep. 17), even when the mortgagee is the purchaser at the foreclosure sale. (*Rawson* v. *Bethesda Baptist Church,* 221 Ill. 216, 77 N. E. 560, 6 L. R. A. (n. s.) 448; see, also, note to *Stockton Nat. Bank* v. *Home Ins. Co.,* 11 A. L. R. 1308.)

In the *Reynolds Case,* above, it is said: "After he [the mortgagee] changed his position from creditor to purchaser, he could, in the latter capacity, have procured a policy on the buildings, and thus insured his interest in the property itself; but whatever interest he had in the old policy ceased with the extinguishment of the indebtedness." Had the instant policy, therefore, contained but the clause above discussed, the position taken by the plaintiff in his pleadings would have been unassailable. However, when the policy under consideration contains the second clause quoted above and appearing in the rider attached to the present policy, which is known as the "Union Mortgage Clause," the authorities are unanimous in holding that it operates as a separate and independent insurance of the mortgagee's interest (14 R. C. L. 1085); the policy becomes a double policy insuring both interests mentioned above; and, where he becomes a purchaser at his foreclosure sale, the mortgagee's interest remains practically the same during the period of redemption,

wherein he holds but the equitable title, as it was prior to the foreclosure of the mortgage.

Under such a policy, the insurance money stands in the stead of the building for the loss of which it was paid, and, in the event of redemption within time, the mortgagor or redemptioner is entitled to the money; the purchaser at the foreclosure sale is, on redemption, entitled to no more than the amount he has paid for the property, with interest and such additional amount as is legally a proper charge against the property in the circumstances. On the other hand, if the owner does not redeem within the period allowed by law, the purchaser is entitled to a deed to the premises and all rights of the owner are at an end. Here the purchaser of the property, before the loss, is entitled to what remains and to the money which stands in place of the lost portion of the property which he purchased. If the money has not been paid, the mortgagee purchaser may recover it from the insurance company. (*Syndicate Ins. Co.* v. *Bohn,* 65 Fed. 165, 12 C. C. A. 531, 27 L. R. A. 614; *Pioneer S. & L. Co.* v. *Providence-Washington Ins. Co.,* 17 Wash. 175, 49 Pac. 231, 38 L. R. A. 397; *Carlson* v. *Presbyterian Board of Relief,* 67 Minn. 436, 70 N. W. 3; *In re Lewis Hackbart,* 203 Iowa, 763, 210 N. W. 544, 52 A. L. R. 895; *Oregon Mortgage Co.* v. *Hartford Fire Ins. Co.,* 122 Wash. 183, 210 Pac. 385; *Newark Fire Ins. Co.* v. *Turk,* (C. C. A.) 6 Fed. (2d) 533, 43 A. L. R. 496; 14 R. C. L. 1085.) The mortgagee who bids in the property before a fire is thus entitled to be indemnified for the damage to his interest (*Uhlfelder* v. *Palatine Ins. Co.,* 111 App. Div. 57, 97 N. Y. Supp. 499), and if the fire occurs shortly before the expiration of the period of redemption, and in regular course of business the settlement for the loss is not made until after that period has expired, the mortgagor, having made no effort to redeem, is in no position to claim any part of the insurance money even though, taken with the value of the remaining property, the mortgagee-purchaser receives more than the amount of his mortgage debt. The situation is no different from what it would be had the building not burned and, after securing a sheriff's deed, the purchaser

should immediately sell the property for a consideration far in excess of the amount he was entitled to on redemption just prior to securing the deed; the former owner would not be heard to say that he was entitled to any part of the consideration ▮ merely because the purchaser made a profit on the transaction. Foreclosure is the process of cutting off all rights of the mortgagor, and, after the period of redemption has expired, the purchaser is entitled to a deed, immediately, conveying full title to the entire property originally mortgaged and bid in at the foreclosure sale, up to which time the insurable interest of the mortgagee was protected by the provision that the policy would not be invalidated by the foreclosure proceeding. (*Trustees of Schools* v. *St. Paul Fire & Marine Ins. Co.*, 296 Ill. 99, 129 N. E. 567.)

Counsel for the Yager estate therefore contends that the judgment should be affirmed under the well-known rule of law that a party is bound by the theory upon which he framed his pleadings and tried his case, citing *Waite* v. *C. E. Shoemaker & Co.*, 50 Mont. 264, 146 Pac. 736; *Columbus State Bank* v. *Erb*, 50 Mont. 442, 147 Pac. 617; *O'Hanlon* v. *Ruby Gulch Min. Co.*, 64 Mont. 318, 209 Pac. 1062, and other like cases. However, here we have a situation not considered in the cited cases and which makes a strong appeal to the conscience of a court vested with equitable jurisdiction, and an appeal in the pleadings to the equity side of the court, and proof, while not supporting the theory outlined in the pleadings, entitling the plaintiff to consideration in an attempt to do justice as well as to administer the law.

The property here was mortgaged for but a fraction of its real value; the dwelling-house alone having a value far in excess of the amount for which it was insured and that amount being half again the amount of the loan made to the owner. The mortgage was given merely as security for the payment of the debt (sec. 8246, Rev. Codes 1921) and remained such security only up to the last day on which the owner was entitled, by law or otherwise, to redeem from the foreclosure sale. The fire oc-

342

curred nearly four months prior to the expiration of the statutory period of redemption, and in the ordinary course of business the insurance money should have been available for redemption long prior to such expiration.

Here, the cross-complaint and answer thereto constitute a ██ suit for the determination of the rights of the parties, independent of the action commenced by the plaintiff. (Sec. 9151, Rev. Codes 1921; *Security State Bank* v. *Melchert*, 67 Mont. 535, 216 Pac. 340; *Continental Oil Co.* v. *Bell*, 94 Mont. 123, 21 Pac. (2d) 65.) By his answer to Yager's cross-complaint, the plaintiff appealed to the equity side of the court for relief from an inequitable claim of the cross-complainant and prayed that the rights of Yager as well as his rights be determined, and, in effect, that the entire controversy be determined by the court. True, he prayed that he be given judgment for the insurance money and that Yager be adjudged to have no interest therein, and thus exhibited a misconception of the equi- ██ table relief to which, if any, he was entitled; but the prayer is no part of a pleading (*Leggat* v. *Palmer*, 39 Mont. 302, 102 Pac. 327), and does not limit the scope of the relief which may be decreed (*Kleinschmidt* v. *Steele*, 15 Mont. 181, 38 Pac. 827), and, in equity, the pleader may have such relief as he shows himself entitled to despite his prayer for relief, and, to some extent, despite his pleadings. (*Davis* v. *Davis*, 9 Mont. 267, 23 Pac. 715, 717; *Anaconda Copper Min. Co.* v. *Thomas*, 48 Mont. 222, 137 Pac. 380; *Mather* v. *Musselman*, 85 Mont. 352, 278 Pac. 998.) "It is a settled rule of equity practice that when the court has before it all the parties to any difference, and when it has obtained complete jurisdiction of the whole subject-matter, it will finally settle the whole controversy." (*Davis* v. *Davis, supra.*)

Had the insurance money been paid when it should have been paid, the mortgagee-purchaser would have been compelled to apply the money received by him to the satisfaction of his claim and the redemption of the property from the foreclosure sale, and such application would have rendered him complete satis-

faction and compelled the release of the property to the owner, leaving enough for the satisfaction of the deficiency judgment and something over to the debtor. By his answer to the cross-complaint, the debtor alleged this consummation was prevented by a fraudulent collusion between the mortgagee and the insurance company to defer settlement until after the period of redemption should expire. The plaintiff failed to establish this allegation by proof; instead, he sought to prove in effect that he was lulled into a sense of security throughout the period of redemption by representations of Yager that he need not redeem as the insurance money, when paid, would take care of his indebtedness, and that all he, Yager, wanted was the amount due him; that he relied upon such representations to his undoing, for after the period of redemption had expired, Yager took possession of the premises and insisted that he was entitled to both the land and the insurance money. To the introduction of this testimony counsel for the cross-complainant objected on the ground that "this testimony is wholly incompetent in any event, any conversation he might have had with Mr. Yager with regard to the redemption of the land. There is only one method provided by law for the redemption of real property, and the question is, Did he redeem it? is all. It is calling for hearsay testimony, * * * testimony as to an original conversation with the person who is now dead." This objection was overruled, after counsel for plaintiff, in answer to the court's query, ▮▮▮ stated that he had no other method of proving the facts. No cross-assignment of error is made on its admission, and it stands as a part of the record before us (*Jarvella* v. *Northern Pacific Ry. Co.*, ante, p. 102, 53 Pac. (2d) 446); but counsel contends that, giving the testimony full credit and weight, "it cannot be said that there was any agreement to extend the time of redemption."

The evidence in question is as follows: Plaintiff testified that he called on Yager the day the period of redemption expired, and said: "I told Mr. Yager I couldn't redeem without the insurance money. Previous to the expiration of the period of

redemption I had seen Mr. Yager in respect to this matter quite often and at the times that I saw him I requested information from him as to whether or not the insurance money had been paid and he had replied that he was taking care of it and for me not to worry; when the insurance money was paid it would take care of the loan. When I told him on the date of the redemption that I could not redeem without the insurance money, he told me not to worry and said that all he wanted from it was the amount due him. He said he didn't want the rest of it, and after the date the redemption expired I saw Mr. Yager often. * * * I had a similar conversation with him and all he ever said was all he wanted was the amount of his mortgage, and the first time that I recall that he seemed to have changed his mind and wanted to keep both the land and the insurance * * * was sometime in the spring or early summer of 1933. He listed the property for sale in the spring after the period of redemption, and that was the time I first discovered he claimed both the land and the insurance, and was going to sell it and didn't.''

This evidence is sufficient to warrant a finding that the mortgagor and mortgagee were in agreement that when the insurance money was paid, the payment would amount to a redemption from the foreclosure sale, and that the mortgagee expressed his willingness to await such payment in satisfaction of his lien without regard to the expiration of the period of redemption; that the mortgagor relied upon the representations so made and was thereby lulled into a sense of security until after his legal right to redeem had expired, and to justify the conclusion that the mortgagee-purchaser was thereby estopped from asserting his strictly legal right to refuse to apply the insurance money to the extinguishment of his lien and to consider the premises redeemed from the foreclosure sale.

The equitable rule applicable has been stated by this court as follows: ''It is well settled that, if the judgment debtor is prevented by the act of the purchaser, whether judgment creditor or not, directly or indirectly, from complying with the

statute, equity will intervene to protect his right and extend the time of the period of redemption. (*Graffam* v. *Burgess*, 117 U. S. 180, 6 Sup. Ct. 686, 29 L. Ed. 839; *Schroeder* v. *Young*, 161 U. S. 334, 16 Sup. Ct. 512, 40 L. Ed. 721; *Benson* v. *Bunting*, 127 Cal. [532] 536, 59 Pac. 991, 78 Am. St. Rep. 81.)" (*Hamilton* v. *Hamilton*, 51 Mont. 509, 154 Pac. 717, 724.)

The statutory period of redemption may be extended by agreement, and such an agreement is not rendered unenforceable merely because no time within which the redemption shall be made is specified, but a reasonable time will be allowed. (*Farmers' State Bank* v. *Anton*, 51 N. D. 202, 199 N. W. 582; *Farrow* v. *Sturdivant Bank*, 184 Ala. 208, 63 So. 973; *Turpie* v. *Lowe*, 158 Ind. 314, 62 N. E. 484, 92 Am. St. Rep. 310; *Mann* v. *Provident Life & Trust Co.*, 42 Wash. 581, 85 Pac. 56.) And whenever the mortgagor has been prevented from redeeming through the fraud of the mortgagee, or has been prevented from raising the necessary funds for redemption through accident, mistake, or surprise, and equitable considerations affording clear ground for equitable interference, demonstrate the injustice of permitting the legal bar to operate against the mortgagor, courts of equity will exercise their well-known jurisdiction in order to do justice, and for this purpose may permit a redemption from foreclosure sale after the period allowed by statute has expired. (See 42 C. J. 393, and cases there cited.) Of course, this relief should be granted only in exceptional circumstances (*Sigler* v. *Phares*, 105 Kan. 116, 181 Pac. 628, 5 A. L. R. 141; *Carll* v. *Kerr*, 111 Me. 365, 89 Atl. 150), but the circumstances are exceptional and the mortgagor entitled to relief by way of estoppel, where he has acted upon assurances that the redemption within the statutory time would not be insisted upon, yet, after the period has expired, the mortgagee-purchaser seeks to rely upon a strict statutory right and thus repudiates his assurance, and this although the assurances were verbal and without consideration, as the rule that the terms of a written agreement may not be varied by an unexecuted agreement, without consideration, does not apply. "The equi-

346

table principle upon which relief rests in such cases is that the debtor was lulled into a false security to his prejudice.'' (*Ivy v. Hood*, 202 Ala. 121, 79 So. 587, 590; *Henderson v. Miglietta*, 206 Cal. 125, 273 Pac. 581; *Bristol v. Hershey*, 7 Cal. App. 738, 95 Pac. 1040; *Tice v. Russell*, 43 Minn. 66, 44 N. W. 886; *Turpie v. Lowe*, above; *Combs.v. Little*, 4 N. J. Eq. 310, 40 Am. Dec. 207; *Turner v. King*, 37 N. C. 132, 38 Am. Dec. 679; *Fenderson v. Fenderson*, 116 Me. 362, 102 Atl. 69; *Farmers' State Bank v. Anton*, above; *Kenmare Hard Coal, Brick & Tile Co. v. Riley*, 20 N. D. 182, 126 N. W. 241; *Schroeder v. Young*, above; Jones on Mortgages, 7th ed., sec. 1053; 42 C. J. 395.)

In view of the exceptional circumstances disclosed by the record, to-wit, that the loss occurred and the insurance money should have been paid long prior to the expiration of the period of redemption, and, had it been then paid, it would have satisfied the judgment and redeemed the property from the foreclosure sale, leaving a considerable sum to be paid to the mortgagor, and that, prior to the date on which the statutory right to redeem expired, and again on that day Yager assured Malvaney that all he wanted was the amount due him, that he was attending to the matter and Malvaney ''need not worry,'' this case falls well within the rule announced in the foregoing cases.

The record discloses that Yager took possession of the premises and rented them to a third party, after the period of redemption expired, although the mortgagor was still entitled to such possession, and it would seem that the renter paid the taxes for the year 1933 and 1934, so that the Yager estate is not entitled to recover taxes paid, and there is no proof in the record that any legitimate charges lie against the property and in favor of the Yager estate, except the $26 insurance premium paid by Yager.

The court found that at the time of the loss there was due on the judgment secured by Yager against Malvaney $1,233, but, as the loss was not paid at that time, the estate is entitled to interest on the judgment, not to the time of loss, but to the time the amount of the judgment against the insurance

347 company was deposited in court. The amount so deposited was

company was deposited in court. The amount so deposited was approximately $1,700, which was apparently deposited on January 5, 1935, from which amount the judgment should be satisfied and the property decreed to be redeemed from the foreclosure sale, and any balance remaining should be adjudged to go to the plaintiff.

The judgment in favor of the Yager estate and against the insurance company is affirmed, but the cause is remanded to the district court of Custer county, with directions to strike from the court's conclusions of law and from the judgment, the declaration that the plaintiff, Malvaney, is entitled to, and shall take, nothing by this action; determine the exact amount due the Yager estate on the judgment rendered in the foreclosure action, as of the date the insurance money was deposited in court, plus any taxes paid by the Yager estate to date hereof and not compensated for, and direct the payment of such amount to the executrix of the Yager estate, less such costs as the court may determine the plaintiff is entitled to, in this action, against the estate. The court shall then supplement its judgment herein by judgment and decree in favor of the plaintiff and against the Yager estate for any balance remaining in the fund in the hands of the court, including such costs as may be awarded plaintiff herein, and direct such balance to be paid to plaintiff; declare and adjudge the sheriff's deed executed to Yager null and void, and the property involved and described in the mortgage redeemed from the foreclosure sale and the judgment therein satisfied, and require the certificate of redemption for which provision is made in section 9444, Revised Codes 1921, as amended by Laws 1927, Chapter 16, section 2, to be executed and delivered to the plaintiff.

Mr. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

Rehearing denied February 17, 1936.