## UNITED STATES FIDELITY & GUARANTY CO. v. COMMERCIAL NAT. BANK OF BRADY, TEX.

### No. 6262.

Circuit Court of Appeals, Fifth Circuit.
Jan. 20, 1932.

R. L. Ball and A. W. Seeligson, both of San Antonio, Tex., for appellant.

W. J. Rogers, of San Antonio, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee, plaintiff below, brought this suit against the United States Fidelity & Guaranty Company on a fidelity schedule bond executed by that company insuring the bank against loss caused by any of the employees listed in the schedule, to the extent of the amount for which that employee was bonded. The bond gives the employer the right, under conditions set out in the policy, to add the names of additional employees, and to increase or diminish the amount of insurance. The provisions pertinent to this suit and much argued at the bar are: (1) "The insurer in consideration of a premium paid * * * by the employer, hereby binds itself to pay to the Commercial National Bank of Brady, Texas, as employer, such pecuniary loss as the employer shall sustain of money or other personal property (including that for which the employer is responsible) through the fraud, dishonesty, forgery, theft, embezzlement, wrong abstraction, misapplication or misappropriation or any other dishonest or criminal act or omission of or by any of the employees listed in the schedule forming part of this bond, directly or in connivance with others, while such employee holds his position in the service of the employer during the period commencing upon the date each employee is listed hereunder, and continuing in the amounts scheduled until the termination of this insurance." (2) "Upon the discovery by any employer of any loss insured hereunder, the employer shall within ten days thereafter deliver notice thereof to the insurer at its home office, and within three months after such discovery · the employer shall file with the insurer a written claim giving the particulars of such loss. The insurer shall have two months after claim before legal proceedings are brought." (3) "This insurance as to any or all of the employees named in said schedule shall only terminate by (a) the employer giving written notice to the insurer, or the insurer giving thirty days written notice of termination; (b) as to any employee, by his retirement from the employ of the employer, or upon discovery of loss through that employee."

The bond in suit was first issued on July 18, 1918. Of those involved in the present claim of shortage only Graham and Ogden, each bonded for $1,000, were then scheduled. From year to year thereafter, new names were added to the schedule, and the amounts of the bonds were from time to time increased, reaching in 1929 and 1930 the maximum for Graham and Ogden of $25,000.

It was the claim of the bank that beginning many years back, and continuing until discovery in 1930, there existed a general practice on the part of its employees of taking money from the bank by cashing checks of employees and their friends when they had no money to their credit, and in other ways, and concealing the takings by, instead of passing the checks through the bank, hiding them away and pulling out and hiding with them enough individual ledger sheets to keep the general ledger in balance. That these takings were made effective through the existence and continuance of this general conspiracy, which beginning with Graham and Ogden, widened from time to time to let in others of the employees. That during some part of the period in question each of the employees participated in and connived at, by dishonest or criminal acts or omissions, the practices from which the losses have occurred. That therefore not only was the bond company liable on each bond for the amount which each employee had embezzled or misappropriated, but it was also liable on each bond to make good to the bank losses resulting through the shortages and takings of others which had come about through the dishonest or criminal act of the employee in conniving with others in the takings.

Defendant admitted in its answer that prior to March 31, 1928, the following amounts were embezzled: Graham, $16,127.-12; Roberts $4,183.70; Ogden $5,421.80; Campbell $1,230, and that it was liable for the shortage of each of these employees in the full amount as to each, of his individual bond, and it tendered that amount, $15,413.-70, to plaintiff. It also admitted the wrongful taking by Freeman of $280.55; by Loyd Irwin, of $1,108.04; by Albert Smith, of $775.50; and by Yantis, of $14, and this total, $2,178.99, it also tendered to plaintiff.

It tendered back all premiums paid on all

bonds after March, 1928, and in addition, by cross-action against the directors of the bank, sought to recover against them any amounts which might be recovered against it by the bank over and above the amount tendered; defendant claiming that through the negligent and willful conduct of the directors it had not been apprised of the conditions obtaining in the bank, and had been thereby induced to renew and increase the bond schedules, when the directors knew or ought to have known thereof, and it denied liability for any moneys misappropriated after March 31, 1928, on the ground that one Davidson, bonded in the same schedules with the others, who had been for many years an officer of the bank, had in 1928 been found short to the extent first of $15,000, and later of $45,000, and the bank had not only failed in its duty under the terms of the bond to immediately notify the defendant thereof, but had induced defendant to renew and to increase the amounts for which the employees in the schedule were bonded, which it would not have done if it had known of the Davidson shortage.

■ In proof of its case, the bank, by the testimony of an auditor, and the offer of excerpts from his audit of its books and accounts, showed that it had lost through embezzlement and misapplication of its funds, considerably more than $90,000; the aggregate amount for which the employees were individually bonded to the bank. This report purported to trace to each of the employees the amounts taken and misappropriated by him by the cashing of his checks. It showed misappropriation of funds through the cashing of checks, when there was no money to meet them on hand, for persons who, though not employees, were connected or associated in an intimate business or personal way with employees of the bank. It showed also a loss on account of customers' interest collected but not credited. In addition, the bank offered the testimony of its faithful officers, and the ex parte affidavits of Graham, Ogden, Roberts, Irwin, and Smith. Each of these affidavits, except that of Roberts, who testified in person at the instance of defendant, was admitted over the objection of the defendant that they were ex parte statements; that they were self-serving in the interest of plaintiff; that the defendant had no opportunity to cross-examine the maker of the statement, he not being tendered as a witness. In this the court erred.

The defendant did not controvert the bank's proof as to the total amount of the moneys lost. It did show that one of the employees, Florence Yantis, had paid back all of the moneys appropriated by her except $14, and that another one, Ogden, had paid back more than $2,600. No witness except Kean, the auditor, undertook at all to fix the dates of the misappropriations. He testified: "On June 22, 1921 W. R. Davidson began a series of stealings which continued until his death in March, 1928, finally amounting to $45,000. Twenty-nine days later Graham, the assistant cashier, saw the easy money and stole the comfortable sum of $1,221.58. On November 29, 1924 Leo Campbell joined this Thieves Union. How long Roberts had known of this wholesale looting the writer cannot say, but he joined the long-fingered band in 1925 when he began to build his own home." The evidence as to when the others came in is more or less indefinite; but it shows that each came at a different time. Nor is there any evidence which undertakes to show, except by periods of two or three years at a time, how much money was taken by any employee and when, nor as to any employee, the amounts of the takings of others in which he connived.

■■ At the conclusion of the evidence, the defendant moved that a verdict be directed for only the amount tendered in its pleadings. This request the court properly refused. Thereafter, instead of, as it should have done, submitting the case to the jury for its verdict, either general or special on the ultimate issues in the cause, whether and how much the bank had lost, and whether and for how much the defendant was liable to plaintiff, on its own motion it propounded to the jury certain preliminary questions for their answer, yes or no. The answers to these questions did not determine that any named amount had been misappropriated by any employee of the bank either directly or in connivance with others; nor did they determine whether and for how much the defendant was liable to plaintiff. Notwithstanding that there was no verdict, general or special, upon which a judgment could rest, plaintiff, upon the coming in of these answers, filed its motion for judgment for $89,027.35. To this motion was attached a tabulation purporting to include the amounts directly misappropriated by each employee, and the periods over which that misappropriation had occurred; the amounts misappropriated by others than employees through their overdrafts, and the amounts collected and not credited on interest. It prayed for judgment on the bond of each employee for

the amount that he directly took, and, upon the theory of connivance, that any excess of his bond be absorbed to cover the excess of the direct takings of other employees over the amounts of their bonds. The judgment granted and followed the motion. This was error, both because of the absence of any verdict in the cause, and because at least in part there was no support for it in the evidence.

Complaining of the judgment against it, appellant is here assigning as errors, among others, the action of the court in admitting over objection the ex parte affidavits; its action in overruling defendant's motion to direct a verdict; and, alternatively, its action in overruling defendant's motions for judgment. It advances in support of its motions various contentions: That the discovery of Davidson's shortage avoided the bond after March 31, 1928, as to all employees; that it at least avoided it after March 31st as to Graham's bond, because, upon the undisputed proof, the bank, at the time it discovered Davidson's shortage, also learned that Graham had for more than a year known of it; that the evidence in this case fails to show either a general conspiracy entered into by all of the employees at the same time and participated in by them throughout the whole period of the takings, or, as to each employee whose bond is sought to be held for connivance, the time when he came into the unlawful agreement and the amounts in the taking of which by each of the conspirators he connived. That the evidence at best for plaintiff shows merely that at some time disclosed by the record as to each, each employee commenced to take the money of the bank, becoming from that time only, complicit in the scheme; that it does not show how much of the money for which the bond of each was held for connivance was taken after or in pursuance of that connivance; that the judgment is therefore to the extent that it is based upon connivance, without evidence to support it.

 Because the judgment must be reversed for the assigned error in admitting the affidavits in evidence, and for the fundamental error that it was entered in a jury case without a jury verdict to support it, it is not necessary to consider in an extended way appellant's contentions. We think it proper, however, in view of another trial, to briefly say of them that we agree with appellant that, in order to fix liability upon the bond for connivance in takings, the proof must show more definitely than it now does either a general conspiracy, like that in

American Surety Co. v. Shaw (C. C. A.) 54 F.(2d) 550, or as to each employee, whose bond is sought to be held for connivance, the amount he connived at, and that as to the charges for interest received and not credited, and the overdrafts of others than employees, the proof must show as to each employee, whose bond is sought to be held, complicity in such loss; but we do not agree that misapplications through interest collected, or through the wrongful cashing of checks of persons other than employees, stand differently as to the requirements of proof than any other moneys which the bonded employees may have embezzled, misappropriated or misapplied, directly or in connivance with others.

 Nor do we agree with appellant that the knowledge of and failure to report Davidson's shortage affects the right of the bank, except as to him, to recover on the bond (American Surety Co. v. Shaw, supra), nor that mere proof of knowledge by Graham of Davidson's shortage proves loss through Graham so as to make knowledge by the bank that Graham did know of Davidson's shortage operate thereafter to discharge Graham's bond; though of course if on another trial it is proved that Graham not only knew of, but connived in Davidson's takings, and the bank knew of that connivance, a different situation as to his bond will arise. We return to a consideration of the errors for which the judgment must be reversed.

 In the absence of an applicable statute such as Texas has, specifically authorizing such practice, a judgment may not in a case tried without waiver to a jury be entered in part upon a special verdict which is not complete, and in part upon findings of the court. Perea v. Colorado National Bank, 6 N. M. 1, 27 P. 322; Ward v. Gradin, 15 N. D. 649, 109 N. W. 57, 60; Standard Sewing Machine Co. v. Royal Ins. Co., 201 Pa. 645, 51 A. 354; State of North Carolina v. Hanner, 143 N. C. 632, 57 S. E. 154, 24 L. R. A. (N. S.) 6 and note.

State statutes regulating the submission of issues to a jury do not apply in the federal courts.

It is fundamental in the federal courts that "where a special verdict is rendered, all the facts essential to entitle a party to judgment must be found, and a judgment rendered on a special verdict failing to find all the essential facts is erroneous." Ward v. Cochran, 150 U. S. 602, 14 S. Ct. 230, 233, 37 L. Ed. 1195; Mounger v. Wells (C. C. A.) 30 F.(2d) 521.

568

In Hodges v. Easton, 106 U. S. 408, 1 S. Ct. 307, 310, 27 L. Ed. 169, a judgment entered like this one was, partly on jury findings and partly on findings by the court, was reversed even where, unlike here, it was claimed that the facts found by the court were conceded or not disputed. In that case the court said: "The record discloses that the defendants had a determination, by the jury, of a part of the facts, while other facts, upon which the final judgment was rested, were found, by the court, to have been conceded, or not disputed. * * * The court could not, consistently with the constitutional right of trial by jury, submit a part of the facts to the jury, and, itself, determine the remainder without a waiver by the defendants of a verdict by the jury. * * * There is no such stipulation in this case, and there is nothing in the record from which such stipulation or waiver may be inferred. * * * Every reasonable presumption should be indulged against its waiver."

Equally apparent is the error assigned to the admission of the affidavit proof.

Appellee's authorities do not support this admission. Those going farthest merely hold that statements of the principals in an ordinary fidelity bond by way of an accounting for the manner of the discharge of their duties are admissible against the surety because the bond guarantees fidelity not only in the doing of the acts which his office calls for, but in accounting as to them. None of them are concerned with a case like this, where, under a schedule bond involving many employees, it is sought to introduce the ex parte statements of some of those employees not made by way or in the course of an explicit accounting for the discharge of their duties, but by way of a general confession of guilt as to themselves, and a general accusation of guilt as to others. It is not competent to make a case in this wholesale and sweeping way by the affidavits of employees, thus depriving the surety of his right to cross-examine. Besides, while the proof does not definitely show as to Ogden and Graham whether their confessions were made while they were still in the employ of the bank, it does show that Smith and Irwin made their affidavits in August, 1930, and that Irwin left in January, 1930; Smith in July, 1929.

Because the court erred in admitting these affidavits in evidence, and in rendering judgment in a case tried to a jury without taking a complete verdict of the jury, either general or special, the judgment is reversed and the cause remanded.