**BTESH et al. v. ROYAL INS. CO., LIMITED, OF LIVERPOOL.**

District Court, S. D. New York.

May 14, 1930.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Ray Rood Allen, of New York City, of counsel), for libelants.

Mortimer L. Shuford, of New York City, for respondent.

WOOLSEY, District Judge.

That part of the libelants' claim which involves loss of a case of silk goods is dismissed.

The libelants will be allowed to recover for the loss of the case of cotton goods.

The libel herein is brought on two insurance certificates, New York to Mexico City, dated November 11, 1926, issued by libelants under a floating policy which they had with respondent, to cover goods shipped by them on the steamship Cauto to Mexico.

One of these certificates, No. 563,704, was for $9,000, to cover the value of "Two cases of silk piece goods," marked "BB-Vera Cruz 1 and 2," and the other, No. 563,703, was for $700, to cover the value of two cases of cotton piece goods marked "AA-Vera Cruz 1 and 2," and the libelants' expenses in handling the goods.

Loss was made "payable to the order of M. & J. Btesh, New York City," on surrender of the certificates.

Each certificate provided: "This insurance attaches from the time the goods insured hereunder leave the factory store or warehouse of the shipper, and covers continuously thereafter while at risk of the assured in ordinary course of transit until delivered at store or warehouse of the consignee at destination, including risk in Appraiser's Stores."

Thus the insurance covered the goods from Btesh's place of business in New York City to place of business in Mexico City of Cherem Brothers, who were the consignees of the shipments as hereinafter explained.

Among the risks covered were: "Including the risks of theft and/or pilferage irrespective of percentage and in the event of nondelivery or loss during transit of any package through the fault of the carrier, this insurance to pay the difference between the insured value of the goods and such amount as the insured may be entitled to recover under the bill of lading."

It is for loss by nondelivery of one case under each certificate that the libelants sue.

The facts so far as they are relevant to my view of the case are as follows:

On November 8, 1926, Cherem Brothers, a firm in Mexico City, purchased through one of its partners, David Cherem, then in New York, from L. & E. Stirn, fifty pieces of silk for $4,194.40 and forty-eight pieces of silk for $4,009.79.

The Stirn firm were instructed to make four boxes of the same size and material, to pack the two purchases of silk in two of the boxes and send the four boxes, two packed and two empty, to Btesh, who was assembling a shipment for Cherem. Stirn complied with these instructions.

About the same time, though perhaps a day or so later, Cherem bought from the Novelty Manufacturing Company 335 dozen cotton napkins at 90 cents a dozen, making a total price of $301.50, and ordered them sent to Btesh for shipment. He also bought from Btesh 3,125 yards of muslin for $312.50.

The two boxes containing the silk were, as above noted, marked "BB. 1 and 2" by Btesh, and the napkins and muslin were packed respectively in the two empty boxes which had come from Stirn. These two boxes when packed were marked "AA. 1 and 2."

Cherem instructed Btesh to insure the two cases of silk as silk but to ship them as cotton on the Ward Line, and so to declare them in the consular invoice before the Mexican Consul General in New York City.

These instructions were followed by Btesh, with the result that all Cherem's goods were shipped as cotton goods under two "order" bills of lading dated November 10, 1926, one for the two cases marked "AA. 1 and 2," containing the cotton goods, and one for the two cases marked "BB. 1 and 2," containing the silk which was shipped and declared as cotton.

The goods were all declared before the Mexican Consul General as cotton goods, and two consular invoices were issued each for two cases of cotton piece goods marked as indicated.

One case marked "AA. 1," containing muslin, and one case marked "BB. 1," containing 50 pieces of silk, were not delivered in Mexico City at Cherem's place of business there.

The respondent contends that the claim should be defeated for illegality, and contends that it was part of a smuggling scheme of which some partners in the Cherem firm had been accused. This may well be so, but it was not established by the evidence, although the circumstances gave strong grounds for suspicion.

The respondent, however, in order successfully to resist the claim for the loss of the silk, under these circumstances, does not have to go so far.

■ It was settled long ago that a policy of insurance covering an adventure which has as its object illicit trade in a foreign country is not illegal. Gardiner v. Smith, 1 Johns. Cas. (N. Y.) 142, 143; Richardson v. Maine, etc., Ins. Co., 6 Mass. 102, 112, 4 Am. Dec. 92; Parker v. Jones, 13 Mass. 173, 176; Andrews v. Essex F. & M. Ins. Co., 3 Mason, 18, 20, 1 Fed. Cas. pages 885, 890, 891, No. 374; Phillips on Insurance, § 268.

■ But the fact that such a trade is in contemplation must be known to the underwriter in order that he may be held on his policy. Richardson v. Maine, etc., Ins. Co., 6 Mass. 102, 112; Pollock v. Babcock, 6 Mass. 234, 238; Seton v. Low, 1 Johns. Cas. (N. Y.) 1, 8.

The question here, however, is not that of the legality of an insurance for illicit trade to Mexico, but is whether there was a concealment from the underwriter of facts which he was entitled to know, namely, that the silk was being shipped as cotton, had been declared as cotton in the consular invoices, and that these two false documents were the documents on which the goods would have to be taken through the Mexican Custom House at Vera Cruz.

■ Concealment consists in the suppression by the insured of any fact or circumstance which the underwriter does not know or is not legally presumed to know and which is material to the risk, or which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk or what his premium would be if he decided to accept it. Cf. Sun Mutual Ins. Co. v. Ocean Ins. Co., 107 U. S. 485, 510, 1 S. Ct. 582, 27 L. Ed. 337. Such a concealment avoids the contract whether it be due to fraud, negligence, accident, or mistake, for the insured is bound to disclose to his underwriter with the utmost candor and frankness all circumstances which would throw light on the nature and perils of the adventure he seeks to insure.

■ Whether a concealment is material or not is for the trier of fact to determine.

■ I think on a policy which insured against nondelivery from New York City to Mexico City, it was a most material fact for the underwriter to know that the documents on which the goods had to get through the Custom House at Vera Cruz were both false.

Consequently I hold there was concealment here of a fact material to the risk, and that there cannot be a recovery in respect of the loss of the case of silk.

I do not think that the respondent took any position when the claim was presented to it which precludes its urging, as it does in its answer, the defense of concealment in respect of the silk.

■ On the question of the claim for the loss of the cotton goods the answer is mute, but the respondent urges on argument that it should also be denied on the theory, apparently, that there was a kind of infection due to the concealment as to the silk which would extend to the separate certificate under which the cotton was insured and preclude a recovery in respect of the cotton. This raises a nice question, but it is an afterthought not pleaded in the answer, and, consequently, I shall not consider it.

As the libelants' principal claim is disallowed, no costs will be granted to them.

If the parties cannot agree on the recovery to be allowed for the loss of the cotton goods in case "AA. 1," they may present an interlocutory decree for settlement on three days' notice.