## UNITED STATES FIDELITY & GUARANTY CO. v. STATE OF OKLAHOMA ex rel. SHULL, State Bank Com'r.

### No. 215.

Circuit Court of Appeals, Tenth Circuit.
Aug. 11, 1930.

Bower Broaddus, of Muskogee, Okl., for appellant.

M. B. Cope, of El Reno, Okl., for appellee.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action to recover on a fidelity bond executed February 16, 1925, by Harvey D. Price, vice president and cashier of the First State Bank of Keota, Oklahoma, as principal, and the United States Fidelity & Guaranty Company, as surety.

The bond was approved by the board of directors of the bank on February 16, 1925, and by the bank commissioner of Oklahoma on February 28, 1925.

The bank was adjudged insolvent and taken charge of by the bank commissioner of Oklahoma on February 21, 1927.

The application for the bond, made February 6, 1925, in part, read as follows:

"3. Is applicant in debt to your bank? No. (a) If so, in what amount? (b) is indebtedness Secured?.... How?.... (c) Has loan written approval of Board of Directors?.... (d) Are the applicant's accounts now entirely correct? Yes. (e) Is there now or has there been a shortage due you by applicant? No. (f) What means have you used to ascertain whether his accounts are correct? Examination three times a year by State Examiner. (g) When were his accounts last examined? November 28, 1924. (h) How often will his books or accounts be examined? Three times a year. (i) Who will make examination? State Bank Examiner.

"4. The applicant will authorize the loans and discounts of the bank. Yes. (a) In what amount? All loans to be approved by directors.

"5. Will the applicant determine as to when losses are to be charged off? Yes. * * *

"10. What officer or committee of your bank will check books and accounts to see that all of the rules and regulations required by the Bank Commissioner are being kept? Directors. How often?.... (a) As to excess loans. Monthly meetings. * * *

"It is agreed that the above representations are warranties, and are to be taken as

the basis of the bond applied for, or any renewal or continuation of same that may be issued by the United States Fidelity and Guaranty Company at the request of the undersigned on behalf of the said applicant."

The condition of the bond was that the surety company should pay "such pecuniary loss, not exceeding Ten Thousand ($10,000.-00) Dollars as said The First State Bank of Keota, of Keota, Oklahoma, aforesaid, may sustain by reason of failure of the principal from and after the date of the beginning of the suretyship to faithfully perform all duties required of such principal while said principal is actually employed by said bank aforesaid."

The bond provided that the suretyship thereunder should "begin on the 6th day of February, 1925, and * * * end (a) with the date of the discovery by said bank that such principal has not faithfully performed all of his duties. * * * "

During each day of the period from January 2, 1923, to February 21, 1927, Price, as cashier, paid overdrafts of various customers of the bank, the aggregate amounts of which ranged between $200 and $4,200. The personal account of Price in such bank was overdrawn almost continuously from January 6, 1916, to February 4, 1925. The officers and directors of the bank had knowledge of such overdrafts when the application was made for the bond.

The personal account of Price was not overdrawn from February 4, 1925, to February 9, 1925. It was continuously overdrawn from February 9, 1925, to February 21, 1927. The amount of such overdrafts was $298.26 between February 9, 1925, and March 21, 1925. The amount of such overdrafts on February 21, 1927, was $2,200.00. The board of directors made examinations of the books of the bank at monthly meetings held in March, April, May and June, 1925, and March and June, 1926. Certificates signed by all of the officers and directors of the bank showed overdrafts in the bank on July 14, 1925, aggregating $279.01.

The board of directors did not hold monthly meetings and make monthly examinations of the books of the bank to ascertain whether the rules and regulations of the bank commissioner were being kept, except for the six months above enumerated.

All of the loans were made by Price, as cashier, and none of them were approved by the board of directors before the money was paid out on such loans. After such loans were consummated, the approval of the board

of directors was secured, as a matter of form, at the next meeting of such board.

During the period between June 6, 1925, and February 21, 1927, Price, in addition to his personal overdrafts, failed to perform faithfully the duties imposed upon him as such cashier, resulting in shortages in his accounts and pecuniary loss to the bank in the aggregate of $6,350.15.

The state sought to recover the amount of such shortages and also the amount of his personal overdraft existing on the date the bank closed. The trial court found against the state on the claim for overdrafts but gave judgment on the other claims of $6,350.15 with interest from July 27, 1927, the date demand was made upon the surety company.

The applicable Oklahoma statutes are:

Section 4119, C. O. S. 1921, which reads, in part, as follows:

"The board shall require the cashier and any and all officers having the care of the funds of the bank to give a good and sufficient bond, to be approved by them, and held by the state banking board."

Section 4119—1, C. O. S. Supp. 1926, which was passed in 1923 and went into effect March 30, 1923, and which reads as follows:

"*Bonds of Employees.*—It is by this Act made mandatory that all persons who are actively engaged in the state banking business in the State of Oklahoma and all active employees of any such bank shall from and after the passage and approval of this Act give fidelity bonds, to the State of Oklahoma, executed by a surety company in the amount fixed by the bank commissioner, and when executed to be approved by the bank commissioner for the faithful performance of their respective duties and every active officer and employee of such state banks shall give such bond within thirty days after such officer shall become active as an officer or employee in a state bank in the State of Oklahoma."

Section 4119, C. O. S. Supp. 1926, which was passed in 1924 and became effective March 22, 1924, and which in part reads as follows:

"The board shall require all active employees of all State banks, to give fidelity bonds to the State of Oklahoma, as provided for in House Bill No. 122, Chapter 157, of the Session Laws of 1923, to be approved by them, and held by the State Banking Board."

Section 4143, C. O. S. 1921, which reads as follows:

"*Liability for Overdrafts.* Any bank officer or employee who shall pay out the funds of any bank upon the check, order or draft of any individual, firm, corporation or association, which has not on deposit with such bank a sum equal to such check, order or draft, shall be personally liable to such bank for the amount so paid, and such liabilities shall be covered by his official bond."

And section 4127, C. O. S. Supp. 1926, which reads as follows:

"*Officer—Borrowing Money.*—1. It shall be unlawful for any active managing officer of any bank organized or existing under the laws of Oklahoma to borrow, directly or indirectly, money from the bank with which he is connected; and the officer making or authorizing a loan to any person, as well as the person receiving the same, shall be deemed guilty of the larceny of the amount borrowed and shall be punished by imprisonment in the penitentiary for not less than five (5) years nor more than fifteen (15) years."

Counsel for the surety company contends that the statements contained in the "Employer's Statement," incorporated into and made a part of the bond, were warranties, that they were false in certain particulars, and that the state is therefore precluded from recovering on the bond.

Certain of such statements were affirmative warranties and, if false in any particular when made, the state cannot recover. Duke v. Fidelity & Deposit Co. of Md. (C. C. A. 9) 5 F.(2d) 305; Rice v. Fidelity & Deposit Co. (C. C. A. 8) 103 F. 427, 430–433; Green v. Interstate Casualty Co. (C. C. A.) 256 F. 81. Others were promissory warranties and if they were not performed by the bank the state likewise cannot recover. Rice v. Fidelity & Deposit Co., supra; 32 C. J. p. 1274, § 495; Id. p. 1294, § 522.

Counsel for the surety company asserts that the statement that Price was not indebted to the bank was false because of Price's personal overdrafts and the overdrafts of customers paid by him as such cashier. We think the context shows that the inquiry as to the indebtedness of Price to the bank referred to direct loans. It was not false, if it was sufficiently broad to include a personal overdraft by Price, because, at the time the application was made, Price's account was not overdrawn. In order to forfeit a bond in the case of an affirmative warranty, true at the time of the application and contained therein but not true at the date of

the issuance of the bond, the contract must stipulate for the intervening period. Schroeder v. Trade Ins. Co., 109 Ill. 157; Day v. Hawkeye Ins. Co., 72 Iowa, 597, 34 N. W. 435; Pioneer Sav. & L. Co. v. Providence-Washington Ins. Co., 17 Wash. 175, 49 P. 231, 38 L. R. A. 397. The contract in the instant case contained no such stipulation. In our opinion, such statement did not include Price's secondary liability for customers' overdrafts, under the provisions of section 4143, supra.

■ Counsel for the surety company asserts that the statement with reference to shortage due from Price was false in that he had theretofore unlawfully overdrawn his account. An overdraft is an indirect loan, due on demand. Faulkner v. Bank of Italy, 69 Cal. App. 370, 231 P. 380, 382; Hennessy Bros. & E. Co. v. Memphis Nat. Bank (C. C. A. 6) 129 F. 557, 559. A shortage is a deficiency or deficit. The word "shortage" describes a situation where a person, in a position of trust, has on hand less assets than he should have. It does not necessarily imply a criminal act. Thomas v. McShan, 99 Okl. 88, 225 P. 713; Whitley v. Newman, 9 Ga. App. 89, 70 S. E. 686; Grand Union Tea Co. v. Lord (C. C. A. 4) 231 F. 390. The word "shortage" would, therefore, include any deficiency in the assets of the bank, for which Price was liable to the bank. Whether the paying of an overdraft would create a shortage, would depend upon the financial condition of the person receiving the loan. If such person were solvent, so that the bank could realize upon such indirect loan as an asset, then it would result in no deficiency or shortage even though the permitting of such overdraft violated a regulatory banking statute. The overdrafts in question were all repaid by Price. There is nothing in the record to show that Price was not fully responsible for the amount of such overdrafts made prior to February, 1925. The proof, therefore, did not establish that such statement with reference to shortage was false.

■ Counsel for the surety company asserts the statement that all loans would be approved by the board of directors was false, in that such loans were not approved until after they had been consummated. The employer's statement represented that Price would authorize all loans and discounts of the bank, and that the board of directors would meet monthly and approve all loans. Under these circumstances, we think the word "approval" was used in the sense of ratification of a loan already made, rather than authorization to accept an application for a loan.

■ Counsel for the surety company asserts the statement that the directors would make monthly examinations of the books, to determine whether all of the rules and regulations required by the bank commissioner were being kept, was false. Such examinations were made up to and including the month of June, 1925. For the reasons hereinafter stated, the bond terminated not later than July 14, 1925. Under these circumstances, we do not think it can be said that such promissory warranty was not performed.

■ Counsel for the surety company further contends that the acts of Price in paying his personal overdrafts and in paying overdrafts of customers of the bank constituted breaches of the condition of the bond; and, upon the discovery by the bank of the first of such overdrafts paid subsequently to February 6, 1925, the bond terminated, by its express provisions.

First: Did Price, in paying overdrafts of customers of the bank, violate the condition of the bond? In the case of Federal Surety Co. v. State, 116 Okl. 186, 243 P. 936, 46 A. L. R. 973, the Oklahoma Supreme Court held that the acts of a cashier, in permitting a customer to overdraw his account, were wilful misapplications within the meaning of that term as used in the condition of such cashier's bond. In that case, the cashier permitted such overdrafts for the purpose of aiding his brother, who was hopelessly insolvent, and clearly did not act in good faith in the usual course of banking business. In the instant case, the evidence does not show that the overdrafts of customers were not paid by Price in good faith, in the usual course of banking business. Price was authorized to make loans, and an overdraft is an indirect loan. While the Oklahoma statute (section 4143, supra) makes a cashier, who permits an overdraft, liable to the bank, in case the overdrawing customer fails to repay the overdraft, it does not prohibit such cashier from paying an overdraft. It is our conclusion that the evidence failed to establish that Price, in permitting customers to overdraw their accounts, failed to faithfully perform his duties as cashier of such bank.

■ Second: Were the personal overdrafts of Price violations of the condition of the bond? Such overdrafts, if dishonest, constituted either embezzlement or larceny. If honest, they constituted indirect loans to

Price, an active managing officer of the bank, in violation of the provisions of section 4127, supra. The personal overdrafts of Price therefore clearly violated the condition of the bond. These overdrafts were probably discovered by the officers and directors of the bank in March, 1925. Certainly they were discovered not later than July 14, 1925, when the officers and directors certified to the amount of overdrafts on that date. Upon such discovery, the bond, by its express terms, terminated. It follows that the court erred in permitting recovery on account of breaches of the bond which occurred after it had terminated.

The cause is reversed with instructions to grant the surety company a new trial.