### AMERICAN SURETY CO. OF NEW YORK v. SHAW, Banking Com'r.

### No. 6278.

Circuit Court of Appeals, Fifth Circuit.

Dec. 15, 1931.

Rehearing Denied Jan. 9, 1932.

Geo. E. Shelley, of Austin, Tex., for appellant.

W. J. Rogers, of San Antonio, Tex., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The First State Bank of Idalou, Tex., having become insolvent, was taken over for liquidation by the banking commissioner. He brought this suit against appellant as surety on two fidelity bonds issued to the bank, one guaranteeing the fidelity of T. B. Walker, cashier, the other, the fidelity of H. B. Stewart, assistant cashier, each for the sum of $10,000.

It was alleged that beginning in April, 1928, and continuing to January 30, 1929,

when the bank was taken over for the purpose of liquidation, the bank had sustained a pecuniary loss of more than the full amount of the bonds in moneys and securities embezzled and wrongfully abstracted or willfully misapplied by the action of said officers in conspiring with and in assisting and aiding one J. L. Brabham, a former officer of said bank, to in effect loot it.

The petition, alleging that during that period the bank had suffered losses through this cause in the sum of more than $35,000, set out and itemized the particular losses which made up the sum, and charged Walker and Stewart with responsibility therefor because of their active complicity therein. It alleged that Walker and Stewart, brothers-in-law of Brabham, a former officer and a large stockholder of the bank, though they well knew that he was an embezzler, that he had misapplied funds of the bank, and would do so again if given an opportunity, they then being in active charge and responsible for the conduct of the bank, wrongfully permitted Brabham to have full access to the funds, books, and records of the bank, and to misappropriate and mishandle them at will, they well knowing that he was misapplying the funds of the bank and aiding and assisting him in doing so.

Appellant denied generally and defended specially on the ground that if Walker, Stewart, and Brabham were during the times alleged in the petition in a kind of common understanding, agreement, and system to embezzle, misapply, and wrongfully abstract the funds of the bank, this agreement and system existed long prior to the date when, at the special instance and request of the bank, the defendant issued its last continuation certificates and the fact of its existence was well known to the officers and directors of the bank. That the act of the bank in concealing these facts from appellant and in inducing it to renew the bonds without acquainting it with this condition was such a fraud upon appellant as to relieve it from liability thereon.

Plaintiff joining issue, the case went to trial. At the conclusion of the evidence the defendant requested a directed verdict on the whole case and also a directed verdict on each of the items sued on. These requests were refused and the case went to the jury on special issues, resulting in a verdict upon which judgment was rendered for $20,000, the full amount of the bonds. Every issue necessary to support the judgment, including a specific finding that Walker and Stewart were in agreement with Brabham to willfully misapply and wrongfully abstract the funds of the bank, and that each of them affirmatively assisted in such misapplication to the extent of $36,552.61, was found by the jury in favor of plaintiff.

Appellant urges here that the jury should have been instructed for it, (1) because of the fraud of the bank in inducing a renewal of the bonds with full knowledge that Walker and Stewart were unfaithful; (2) that there was not sufficient evidence as to either Walker or Stewart that he was guilty of or implicated in, the willful abstraction or misapplication of the funds of the bank, to make a jury issue.

Upon the first ground appellant cites cases like National Bank of Asheville v. Fidelity & Cas. Co. (C. C. A.) 89 F. 819; Hebert v. Lee, 118 Tenn. 133, 101 S. W. 175, 12 L. R. A. (N. S.) 247, 121 Am. St. Rep. 989, 11 Ann. Cas. 1029; Screwmen's Ben. Ass'n v. Smith, 70 Tex. 172, 7 S. W. 793; Saint v. Wheeler & Wilson Mfg. Co., 95 Ala. 362, 10 So. 539, 36 Am. St. Rep. 210; American Surety Co. v. Pauly, 170 U. S. 151, 18 S. Ct. 552, 42 L. Ed. 977, laying down the doctrine that where a principal knows of criminal or immoral conduct of an agent which unfits him for the position which he holds, it is his duty, whether the surety makes inquiry on the point or not, to give the information and that its withholding amounts to such conduct upon its part as will relieve the surety from liability. The principle is sound enough. It does not apply here, for not only did the jury find the fact issue as to the complicity of Walker and Stewart in the misapplications of Brabham prior to the time he was put out, and they were put in charge of the bank, and of the knowledge of the directors of such complicity, if it existed, against defendant's contention that they were complicit, and that the bank knew of that complicity, but there is in reality no evidence raising either of these issues. American Surety Co. v. Pauly, 170 U. S. 151, 18 S. Ct. 552, 42 L. Ed. 977.

The other point, whether there was sufficient evidence to support the verdict that Stewart and Walker were acting with Brabham in misapplying the funds of the bank, we think no better taken. The record teems with evidence which not only supports, but we think practically compels, the finding that Stewart and Walker, brothers-in-law of Brabham, were his tools in the looting of the bank.

It will serve no purpose to set the testimony out at length. It is sufficient to say that

after Brabham's defalcation had been discovered in March, 1928, and he had been relieved from his duties in the bank, they were put in charge of the bank under explicit instructions not to let him come into it, or have anything to do with its management. This they agreed they would not do. In violation of this agreement and understanding, they allowed him to come into the bank at any and all times and to take such liberties with the bank's funds, its books, and its records as he wished, with the result that within less than a year the bank suffered losses of more than $30,000 which, through fraudulent handling and manipulation of the records with their knowledge and assistance, was kept concealed until it was discovered by the bank examiner in January, 1929, when the bank suspended payment. It is true each took the stand to deny complicity in Brabham's misconduct. Each, however, on the stand made admissions which showed that he had actually helped Brabham handle some of his spoliations, and that he had knowledge of and assisted in concealing others of them, while some of the plaintiff's witnesses testified to statements and admissions made by them tending to prove complicity in them all. More than that, however, the very facts themselves, the smallness of the bank, the fact, though they were in charge of the bank, of the dominating intrusion into its affairs of the discredited Brabham, the condition of the ledger sheets, the "little black book," and the fast rising shortage, furnish testimony of so convincing a character that Brabham did what he did with the bank with their aid and connivance, and that without it he must have failed in his designs, as not only to support the verdict of the jury finding them complicit, but as almost, if not quite, to prevent any other. Austin v. Nieman (Tex. Com. App.) 14 S.W. (2d) 794.

It may be that there were a few of the items covered by defendant's special requests for instruction as to which fraudulent misapplication or abstraction was not shown. These items are insignificant in themselves and in their total. They may be disregarded altogether, and there will still be a shortage upon the undisputed evidence, far in excess of the judgment recovered. Beyond peradventure, more than $30,000 of the bank's money was misappropriated and misapplied by some one. The proof is ample to support the finding that for these abstractions Walker and Stewart and their bonds are responsible to the bank.

The judgment is affirmed.