### AMERICAN SURETY CO. OF NEW YORK v. BANKERS' SAVINGS & LOAN ASS'N OF OMAHA, NEB.

#### No. 9225.

Circuit Court of Appeals, Eighth Circuit.
May 24, 1932.

Rehearing Denied July 28, 1932.

**578**

Matthew A. Hall, of Omaha, Neb. (Raymond G. Young and Harvey M. Johnsen, both of Omaha, Neb., on the brief.), for appellant.

Clement L. Waldron, of Omaha, Neb. (David O. Mathews, of Omaha, Neb., on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and CANT, District Judge.

CANT, District Judge.

The parties will be designated as in the court below where the Bankers' Savings & Loan Association of Omaha, Neb., was plaintiff and American Surety Company of New York was defendant. Plaintiff is a corporation, and during the times herein referred to was engaged in carrying on a building and loan association business at Omaha, Neb. For years, one A. D. Touzalin was a trusted employee of plaintiff, and as security for the faithful performance of his duties he had given a bond to plaintiff with the defendant here as surety thereon. Such bond covered the times here in question, and, among the terms and conditions thereof, provided as follows:

(1) "That loss be discovered during the continuance of this suretyship or within fifteen months next after its termination, and notice thereof delivered to the Surety at its Home Office in the City of New York within ten days after such discovery."

(2) "That claim, if any, be submitted by the employer in writing, showing the items and dates of the losses, and delivered to the Surety at its Home Office within three months after such discovery."

On October 21, 1924, plaintiff discovered that in its books and records, which had been under the general supervision of Touzalin, there were serious irregularities, and that said Touzalin had made certain wrongful abstractions and misapplication of moneys belonging to the plaintiff. On being charged therewith, Touzalin, with some qualifications, admitted that various such abstractions and misapplications had been made, and gave to the plaintiff a note in the sum of $4,201.95 to cover said peculations, and asserted that the note so referred to covered the total sum which he had wrongfully taken. On the giving of said note, Touzalin was discharged from the service of plaintiff. The amount included in said note is not included in the amount of the recovery which is here sought.

On October 22, 1924, plaintiff discovered for the first time that among its files was another note of $9,859.37 payable to plaintiff, made by the said Touzalin, and dated January 27, 1921. The officers of plaintiff knew that this note did not represent any legitimate indebtedness of Touzalin to the plaintiff. They could get little or no information about such note from him. The bookkeeper, who evidently knew something about the matter and knew why said note had been given, was unwilling to state the facts, and made no disclosure to the plaintiff. The officers knew that something was wrong and, taken in connection with what they knew concerning the items which made up the note of $4,201.95, they had good reason to believe and, very likely did firmly believe, that the earlier note of $9,859.37 was made and deposited in the files as part of a plan on the part of Touzalin to help himself to the moneys of the company and then cover up the transaction, or keep track thereof, by going through the formality of giving a note in place of the money taken. Later developments made clear that such were the facts.

On making the discoveries above mentioned, plaintiff gave no notice whatever to defendant and took no action for a thorough examination of plaintiff's books and accounts, except to apply to the state banking department for an examination to be made by some employee or official of that department. Such work was not begun until nearly four months had elapsed, and the report thereof was not made to plaintiff until March 10, 1925. On or about said date, oral notice of the result of such examination was giv-

en to certain representatives of the defendant in the state of Nebraska, but no notice thereof was given by the plaintiff to the home office of the defendant in New York. Proof of loss on behalf of plaintiff finally reached defendant on or about May 18, 1925.

When it furnished the proof of loss to defendant on the date last mentioned, plaintiff covered the defalcations represented by both notes. There is no claim that on October 21, 1924, plaintiff had not discovered the defalcations covered by the note of that date. It is claimed by plaintiff that the defalcations which were covered by the note of January 27, 1921, were not discovered until May 10, 1925, and that, since its present demand is limited to the amount represented by that note, and that, as it claims, the requirement of the bond for a notice within ten days was waived as to the items covered thereby, a recovery may be had thereon. This is not correct. Without question, through the finding of the note of earlier date, the officers of plaintiff were fully charged with notice of whatever losses might have been revealed by thorough investigation. Without question they should have known that the note was given to cover defalcations of Touzalin. They cannot be heard to claim otherwise. Notice of losses purporting to be covered by the note last above referred to should have been given promptly after the discovery thereof.

In this case, there was a verdict for the plaintiff. The defendant has appealed to this court, and has assigned the following errors:

(1) That the court erred in refusing to direct a verdict in favor of the defendant.

(2) That the court erred in excluding from the consideration of the jury the note of $4,201.95, and the facts in connection therewith and in giving to the jury certain instructions appertaining thereto.

(3) That the court erred in instructing the jury that in this action plaintiff had a right to rely on the acts of Touzalin, the employee of plaintiff, whereby he caused the loss of $9,587.52, and upon those acts only, and that it was no defense for the defendant to show that there were other wrongful acts within the scope of the bond which were not reported to the defendant.

In such cases, the purpose of requiring notice to defendant, upon the discovery of wrongdoing on the part of the principal in the bond is so that the insurer, with such knowledge, may promptly take such steps as may be possible to prevent further losses, or to terminate its liability on the bond, or to obtain reimbursement or further security as to liability already incurred. Gamble-Robinson Co. v. Mass. Bonding & Insurance Co., 113 Minn. 38, 41, 44, 129 N. W. 131; American Credit Indemnity Co. v. Wood (C. C. A.) 73 F. 81, 86. The giving of such notice promptly is most important, and is so understood by all, and requirements in that behalf must be strictly complied with. Riddlesbarger v. Hartford Insurance Co., 7 Wall. (74 U. S.) 386, 390, 19 L. Ed. 257. Delay in the giving of such notice cannot be justified by the claim that the obligee in the bond did not have detailed information as to the losses which it had sustained. If that were the rule, the surety might be kept long in the dark while wrongdoing, without check, was being allowed to go on. During such time, its liability might be increasing by leaps and bounds. This would not do. Ordinary fairness, under the terms of such a bond, requires that, when the obligee has reasonable grounds for believing that the terms of the bond have been violated, and that loss has been sustained, it should give prompt notice to the surety to the end that the latter may take steps to protect its rights. Ætna Indemnity Co. v. J. R. Crowe Coal & Mining Co. (C. C. A.) 154 F. 545, 575, 576; National Bank of Asheville v. Fidelity & Casualty Co. (C. C. A.) 89 F. 819; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977. In this case, on October 22, 1924, plaintiff had before it the note of $4,201.95 taken from Touzalin the day before to cover his peculations of a comparatively recent period. It knew of the rather extraordinary discovery of the note of January 27, 1921, almost immediately thereafter. It knew all the circumstances hereinbefore detailed in connection with the giving of the one note and the discovery of the other. These circumstances amounted to far more than mere suspicion as to the wrongdoing of Touzalin in connection with the amount represented by the larger note. They proclaimed his corrupt dealings in that behalf and, without question, brought plaintiff fully within the rule which required it to give notice to the defendant. In this case, the delay of the plaintiff in giving the notice was quite unusually prolonged, and the justification urged, namely, the delay of the state banking department, is quite insufficient. Any competent accountant could have furnished the information long before the same was, or could have been, available from the state au-

thorities. No such detailed information, however, was necessary to fix upon plaintiff the duty of giving prompt notice to defendant.

There is much ground, too, for claiming that the discovery of defalcations covered by the note of $4,201.95 required the plaintiff to give notice of the losses involved thereunder. This was not a case where the failure to give such notice was due to oversight, and it should not be that, under such circumstances, an obligee on detecting wrongdoing, which came strictly within the terms of the bond, should be at liberty to notify the bonding company, or not, as it should see fit, and then, later on, after other misappropriations should be discovered, at its choice seek to hold the surety on account thereof. The obligee in such cases should have no such election. While we do not rest the case upon this point, it is our opinion that, when an obligee in a bond, such as in the case at bar, learns that its employee is corrupt, and has violated the terms of the bond, the surety is then entitled, as a matter of right, to be given notice thereof, whether in that immediate connection a claim is to be made against it or not.

It is urged that defendant waived compliance with the provisions of the bond as to notice. There could be no waiver until defendant had knowledge of the facts and was aware of its rights in connection therewith. It was not until June 12, 1925, that defendant had notice that plaintiff was aware of the peculations here involved as early as October 22, 1924. There was no waiver.

Plaintiff complains that the bond contained no forfeiture clause. Such clause was not necessary. We are dealing with an agreement in writing. By the terms thereof, under certain conditions, a recovery might be had against defendant. In this case, the conditions were not met or performed. Therefore no recovery may be had.

A further contention of plaintiff is that the provisions of section 44-322, Compiled Statutes of Nebraska 1929, prevent defendant from taking advantage of the fact that notice was not given as required by the terms of the policy. The statute does not apply. In the nature of things, the failure to give notice could not have existed at the time of the loss, or have contributed thereto.

In our opinion, the assignments of error above referred to are all well taken. The court should have directed a verdict for the defendant. The case will be reversed and remanded to the court below for further proceedings not inconsistent with this opinion.