UNITED STATES FIDELITY & GUARANTY CO. v. HOWARD.

No. 7067.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1933.

Robert L. Anderson and R. Lanier Anderson, Jr., both of Macon, Ga., for appellant.

E. W. Jordan, of Sandersville, Ga., and Jno. R. L. Smith and Jos. LeConte Smith, both of Macon, Ga., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

In October, 1927, the schedule fidelity bond which in 1905 the appellant had executed to the First National Bank of Sandersville on certain of its employees was by continuance

certificate made to cover, in the amount of $10,000, O. J. May then elected vice president. By the bond appellant covenanted broadly to secure the bank against loss caused by the dishonest or bad faith acts or omissions of its employees. It covenanted, subject to the provisions and agreements contained in the bond, "to pay to the employer the amount of any loss or damage that shall happen to the employer in respect of any funds, property or estate belonging to or in the custody of the employer, through the dishonesty of any of the employees, or through any act of omission or commission of any of its employees, done or, omitted in bad faith, and not through mere negligence, incompetency or any error of judgment and whether such dishonesty or such act of omission or commission occurs in the performance of any duty or trust specifically assigned to such employee or occurs otherwise."

Less than two years afterwards, and while the times were still flush, the bank on March 14, 1929, closed its doors, insolvent. Lohn, the liquidator appointed by the Comptroller, undertook to get together and realize on its assets. After he had been working at this for some time, he in February, 1930, notified the appellant that he had discovered that the bank's condition was in part due to a breach of the bond, in that May had, dishonestly and in bad faith, despoiled it with worthless paper. Thereafter, within the times fixed in the bond, proofs of loss were filed and this suit brought.

According to appellee, all the bank's troubles and losses had their root in the fact that May and Holt, the president, had, immediately after May's appointment, begun a systematic exploitation of its resources, which continued until the bank failed; that in the course of it the bank was despoiled of its assets by May's fraud, dishonesty, and bad faith. This spoliation was effected, not by a downright purloining of the bank's funds, but by siphoning them out through watered loans to his and Holt's creatures, represented by paper having a nominal, but no real, value. The jury took appellee's view, and cast appellant for the amount of the bond. Feeling itself aggrieved by the verdict of the jury, appellant comes here, assigning as errors the failure of the trial court to direct a verdict for it and the giving and refusal of instructions.

The points relied on under its assignments, all properly preserved, are brought forward and presented by appellant and met by appellee with such clarity and precision as to invite and facilitate like clarity and precision in their disposition. Broadly speaking, except for the one direct defense seriously urged by appellant, of no breach of the bond, that is, that the evidence wholly failed to show loss to the bank through the bad faith or dishonesty of May, the appellant's other grounds on the refusal to direct as well as its points on the charge are in the nature of pleas in avoidance. These, admitting for the purpose of the plea May's breach of his bond, deny liability for that breach, because of breaches by appellee of its obligations. These are: (1) That the answer appellee gave to the question, "Is applicant in debt to your bank?" that May owed $7,650 was not true and correct, in that, while it did truly state the amount of his direct indebtedness, it did not disclose that the bank held May's indorsement on $42,299.67 of paper which he had discounted to it. (2) In that the undisputed proof showed that the promissory representations made by the bank (a) that an auditing committee appointed by the bank would examine Mr. May's books and accounts semiannually, and (b) that a committee would pass on the security of its loans, were not complied with. (3) In further avoidance they urge that the undisputed proof showed that the president and cashier of the bank had such actual knowledge of the breaches which the company now complains of as would, under the terms of the bond, relieve the company from further liability. (4) That the proof showed that Lohn, the receiver, did not, in accordance with the requirements of the bond, give the company prompt notice of the discovery of the loss he claimed, and did not submit proofs of loss within six months after such knowledge had been acquired.

Disposing of these points in the order in which appellant raised them, we overrule the first on the ground that the answer of the bank to the question propounded was true, and that the failure to disclose, in the absence of questions calling for it, the amount of paper on which May was an indorser, was not a breach of the bond. In short, we hold that the question as to the state of May's indebtedness to the bank called for no more information than the bank gave, and that it would be a harsh and unreasonable construction of the bond, and contrary to the principles governing cases of this kind, to hold it defeated by a failure to furnish information not called for. U. S. F. & G. Co. v. State of Oklahoma (C. C. A.) 43 F.(2d) 532.

Nor is appellant at all aided by clause 12 of the bond: "Employer will upon request of

the company, state truthfully in writing the amount if any, that such employee owes it by overdraft, promissory note as endorser or otherwise." This clause obligated the bank to give this information only if requested. It did not otherwise obligate it. The specification is without merit.

▉▉ Nor do we find any more merit in appellant's second specification, that the failure of the bank to fulfill its promissory representations that an auditing committee would examine May's books and accounts prevented recovery on the bond. Failure to perform agreements of the kind in question prevent recovery on bonds when it is so provided in terms, and sometimes they may do so when, though not made in terms conditions of recovery, they bear such relation to the risk as to be of the essence of the consideration for taking it on. The question then in every case is not whether the representation claimed to be breached was promissory or of a past event, but whether, in express terms, the bond provides that breach of it shall defeat recovery, or in its nature it is so related to the objects of the agreement that it operates to defeat recovery. Each suit upon a bond then turns upon the conditions of that particular bond. Each decision must be read in the light of the governing principle and of the terms of the bond construed. This principle governs the Nonantum Case (C. C. A.) 56 F.(2d) 329. There the bond in express terms made the performance of the promissory representation a condition precedent to the right of recovery.

In U. S. F. & G. Co. v. Commercial National Bank of Brady (C. C. A.) 62 F.(2d) 718, cases fully discussing these principles are cited. The bond does not in terms provide that these promissory agreements are conditions to recovery. In the light of the authorities, nothing in the conditions attending the giving or continuance of the bond warrants the conclusion that the failure to audit May's accounts constitutes such a breach of the bond as to defeat recovery on it. In their light the court charged the matter not prejudicially, but favorably, to appellant.

We think the third point, that the knowledge of the officers of the bank, and the fourth, that that of the receiver was such that appellant was entitled to have its motion for an instructed verdict granted, must be ruled adversely to appellant on the authority of the Brady Bank Case, supra. An examination of the evidence fails to show, as matter of law, that any officer of the bank not immediately in collusion with May knew of his bad faith, as it equally fails to show, as matter of law, that the receiver did not within a reasonable time after discovery of it make his claim within the time fixed in the bond, and thereafter file proofs of loss and sue.

▉▉ As to the manner of the submission of these issues of knowledge, an examination of the charges given by the court shows that without prejudice at all to appellant they were fully and fairly submitted. This leaves for consideration only the question whether there is evidence in the record supporting the charge of bad faith and dishonesty, or whether, for want of it, appellant should have his directed verdict. To that point, serious and difficult, we now turn our attention. Serious and difficult because, while the general nature of some of the accusations, and the equally general nature of some of the proof together with the almost purely circumstantial character of most of it, tend to give the action a speculative cast, there yet is enough of specification in the accusations and in the proof to make it greatly difficult, in fact, we think impossible, to say, that no case at all for a jury verdict is made out. Convinced as we are that as to many of the items no case was made out, we are equally convinced that, circumstantial as it all was, the evidence established with sufficient definiteness to sustain the jury verdict that losses, at least to the amount of the bond, were sustained by the bank through the bad faith of May in exploiting it for his own purposes.

Finally, though we think it plain that appellant would have been entitled to an affirmative charge as to many of the specified items if it had requested it, no such request was made, but only a general request for a general charge. In this situation, the failure to partially instruct may not be complained of. Appellant can prevail on the assignments only if, taking the evidence as a whole, the appellee failed to show any substantial loss within the coverage of the bond.

An examination of the record in this case makes it clear that that was a jury question. This is not a case of values fixed in boom times, shrinking in the following depression. Here the exploitation occurred, if at all, in the prosperous years. In the space of a year and a half from October, 1927 to March, 1929, at the height of what was called good times, the assets of the bank were frivoled away on notes of May and his concerns, while he and Holt, trading on the money of the bank, devoted it to their ventures. In the end, the

question here is of motive, the secret springs of action. May either through inexcusable carelessness or ignorance, or through bad faith and dishonest failure to differentiate between the bank's money and his own, filled it with worthless paper. If the evidence had shown no more than that bad loans had been made to strangers by May, of course no case would have been made out; but, when it showed that bad loans were made to his companies, in effect, to himself, and even further, in specific cases like that of the Hancock notes, it showed that there was a deliberate taking of worthless paper to fulfill Holt's and May's designs, the jury were authorized to determine for themselves why things were done as they were done, and to say whether, upon all the facts, including the testimony of May himself, whom they had upon the stand, the damaging things were done in ignorance or through carelessness, or were done dishonestly and in bad faith.

Impressed as we are with the justice of appellant's claims, that the proof did not sustain the charges as to a considerable part of the loss suffered by the bank, we are yet unable to say that there was not sufficient evidence to take the plaintiff's issues to the jury, and to sustain the verdict.

The judgment is affirmed.