FIRST STATE BANK OF GUSTINE, TEX.,
v. NEW AMSTERDAM CASUALTY
CO. OF NEW YORK.*

No. 7974.

Circuit Court of Appeals, Fifth Circuit.

June 4, 1936.

*Rehearing denied July 16, 1936.

Woodville J. Rogers, of San Antonio, Tex., for appellant.

Albert B. Hall, of Dallas, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was on a bank officer's bond and continuations given by White, its cashier, insuring plaintiff bank against embezzlement, wrongful abstraction, or willful misappropriation of its cash or securities. No written application was made for the bond nor were any oral representations made to obtain it. The defense was fraudulent concealment by the officers of the bank of conduct of White, to wit, misuse of the bank's funds which unfitted him for a position of trust. The proof was that in October, 1930, before the execution of the obligations sued on, the state bank examiner had discovered and advised the officers and directors that White, without the knowledge and consent of the directors, had become indebted to the bank in the sum of $889.60 by paying his own checks drawn on the bank. It further showed that, upon the matter being called to White's attention, the credit balances available to White were applied, reducing to $500.80 the net funds of the bank used by him and this was immediately repaid. It showed, too, that the directors reported to the bank examiner that after full investigation they had concluded that Mr. White had had no intention to defraud the bank and that there should be no prosecution. That he had merely temporarily used the funds, having the ability and intention to repay them, and that, White having promised that he would not again do this or any other thing which would not be in line with good banking, they preferred to and would keep him on. The directors also testified that, after hearing White's explanation, they continued to have the utmost confidence in his honesty and integrity, and in that complete confidence had continued him in the employ of the bank. That they would not have done this had they felt otherwise. They testified, too, that at the time the contracts of insurance were written they had no intention whatever to defraud or mislead the defendant. That they never received any communication from defendant asking for information, and that they did not communicate with it nor undertake to give it any information of any kind.

Plaintiff contended below, and urges here, that the circumstance of the use of the bank's funds by White to discharge an obligation for which, though not immediately available, he had arranged for funds, his immediate repayment upon demand, his long good record as a banker, his assurance that no irregularity of that kind would again occur, placed the matter, though a violation of a regulatory banking statute, in the category, not of a criminal taking of funds, but of an irregular use by overdraft of the bank's credit. United States F. & G. Co. v. Oklahoma (C.C.A.) 43 F.(2d) 532, 536.

That therefore the bank's officers were justified in entertaining the belief that White was fit for, and in their conduct in retaining him in, his trust position. It urged below, and insists here, that, in view of the circumstances and of their good faith and their confidence in White, it cannot be said, as matter of law, that their failure to disclose White's irregularity was fraudulent, that whether their conduct was fraudulent in fact, whether, in short, they really believed in White's fitness, was for the jury to determine. That the issue was, not whether the matter would have been deemed by defendant material to the risk, but whether plaintiff's officers, believing that White was unworthy of trust, or that he had committed an act which unfitted him for the position he was to be bonded for, fraudulently kept silent to induce the making of the bond.

Defendant insisted below that, though no inquiries were made of the bank about White, and though its officers in good faith believed in White's honesty and trustworthiness, and believed the fact of his overdrafts did not unfit him for his position, the fact of his shortage was so material to the risk that the failure to disclose it was fraudulent as matter of law. The District Judge, agreeing with this view, directed a verdict for defendant.

This direction is the only error assigned. The only question for our consideration is its correctness.

We think the direction was error. It may not be doubted that, generally speaking, it is fraud for an employer, without making full disclosures, to apply for and accept a fidelity bond upon an employee whom he knows or believes to be untrustworthy, or guilty of conduct which unfits him for a position of trust. American Surety Co. v. Shaw (C.C.A.) 54 F.(2d) 550. On the other hand, the mere failure of bank officers, who sincerely believe an employee to be trustworthy, to disclose facts not inquired for, which do not, in their opinion, affect his trustworthiness, is not, it cannot be, a fraudulent concealment defeating the bond, unless perhaps it is also shown that, knowing that the bond would not issue if the insurer knew the facts, they deliberately withheld them to obtain its execution. United States F. & G. Co. v. Howard (C.C.A.) 67 F.(2d) 382; Copper Process Co. v. Chicago Bonding & Ins. Co. (C. C.A.) 262 F. 66, 8 A.L.R. 1477; Ætna Indemnity Co. v. Farmers' Nat. Bank (C.C.A.) 169 F. 737; Fidelity & Deposit Co. of Maryland v. People's Bank (C.C.A.) 72 F.(2d) 932; American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977; General Reinsurance Corporation v. Southern Surety Co. (C.C.A.) 27 F.(2d) 265. There is, in short, absent fraud in fact, no duty, except to answer truly all questions asked, upon an employer to make disclosures regarding the employee to be bonded. Whether there was fraud in fact here, unless the evidence admits of no other conclusion, was therefore for the jury. The officers of the bank say that they thought White entirely free of any intention to despoil the bank. They thought him trustworthy. They declined to prosecute him; they retained him in his position. Further tending to make a jury issue of their testimony that until these last shortages were discovered they truly believed him trustworthy, they point to the fact that they did not increase, they reduced, the bond he was under. We do not think it can be said as matter of law that they knew he was untrustworthy, and fraudulently refrained from disclosing it. If the jury should believe that the bank officers really had no confidence in White, really did not believe him trustworthy, but kept him for other reasons than their belief in him,

if, in short, the jury should find that there was a deliberate concealment of conduct the directors believed showed him unfit, for the purpose of fraudulently inducing defendant to make the bond, they should of course find for the defendant. But, if the jury should find that the officers of the bank really believed in and trusted him, considering that, however the law characterized his conduct, there was in fact only an overdraft which was not intended to and could not despoil the bank, that they believed his assurances that this would not occur again, and that they did not deliberately withhold the information from defendant in order fraudulently to induce its execution of the bond, they should find for plaintiff.

Appellant and appellee each cites cases in support of its contention. Examination of the cases appellee cites shows that they really are not in conflict with those appellant relies on. Some of them deal with contracts of marine insurance, as to which, unlike other contracts of insurance, the obligation of full disclosure is required. Cf. Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co. (C.C.A.) 72 F. 413, 38 L.R.A. 33; Guarantee Co. of North America v. Mechanics' Savings Bank & Trust Co. (C.C.A.) 80 F. 766; General Reinsurance Corporation v. Southern Surety Co. (C.C.A.) 27 F.(2d) 265; Btesh v. Royal Ins. Co. (D.C.) 40 F.(2d) 659. As to its other cases, while there are expressions in some of them which would seem to impose a more rigorous duty of affirmative disclosure, when properly understood they require what the cases appellant relies on require, that: "If, in the course of the employment of the obligee, the person of whom surety is asked has been guilty of acts showing moral delinquency and utter unfitness for trust, some of the cases hold, and it seems to us properly, that in such case information should be given to the surety." Screwmen's Benevolent Ass'n v. Smith, 70 Tex. 168, 7 S.W. 793, 795. Carefully read, none of appellee's cases go further than this. All of them announce the doctrine that a principal, knowing or believing that his employee is a defaulter, or that he has been guilty of conduct which shows him to be unfit to be trusted, may not, without disclosure, take fidelity insurance on him.

As to all kinds of insurance, except marine, the statutes and decisions have

worked out the rule that, in the absence of actual fraud that is a deliberate intent to overreach by withholding what the insured knows the insurer is entitled to know, the rule is that the failure to disclose matters not inquired about will not defeat a policy. The testimony in this case is sufficient, we think, to raise the issue of fraud. It is not sufficient to establish it as matter of law. This is, in short, a jury case; it should have been sent to the jury under appropriate instructions.

Reversed and remanded.