## AMERICAN EMPLOYERS' INS. CO. v. CABLE.

### No. 9046.

Circuit Court of Appeals, Fifth Circuit.
Dec. 2, 1939.

Allen R. Grambling and Ben R. Howell, both of El Paso, Tex., for appellant.

Louis A. Scott, of El Paso, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee brought this suit against Hinsey, an employee, and appellant, the surety on his fidelity bond. The claim was that while employed and bonded as bookkeeper and clerk for the receiver, and in his capacity as such, the defendant Hinsey had embezzled, abstracted, misappropriated and converted, sums aggregating $4,479.40.

Tried to a jury upon a stipulation as to most of the facts, and undisputed evidence as to the rest, there was a directed verdict and judgment for plaintiff, for the full amount sued for. The bonding company alone appealed. Not at all disputing that Hinsey wrongfully obtained the full amount sued for, appellant makes two points against the judgment. The first point directed at the whole judgment is, that a verdict ought not to have been directed, because there was evidence that having knowledge or notice of Hinsey's unfaithfulness and unfitness for bonding, appellee's predecessor procured his bonding, and he and appellee, permitted him to remain in their employ, in violation of the duty owing to appellant as surety, to advise him of such unfitness and unfaithfulness.

The second point directed at $1,000 of the recovery is, that this was not covered by the bond, because; (a) it was not gotten from the receiver or his trust, and; (b) though gotten by Hinsey on district warrants endorsed in the receiver's name, the receiver neither suffered any loss, nor incurred any liability on account of its getting and appropriation by Hinsey, because the warrants were no longer valid obligations, having been paid and discharged.

In support of its first point, appellant, invoking the settled · rule; that, an employer who knows that an employee is corrupt or unfaithful and therefore unfit for bonding, is in duty bound to impart this knowledge to a bonding company which is, or is being solicited to, become surety on the employee's fidelity bond, insists that appellee had such knowledge.

In support of its second point, that the receiver sustained no loss on account of the $1,000 obtained on the warrants of Girvin Independent School District, the Bank points to the stipulated fact that, they had been paid off and discharged, and to the law that, nonnegotiable in form and in fact, and subject in the hands of all takers, to all defenses, they were mere worthless paper.

As to the first point, appellee insists that the facts stipulated, as well as those testified to without dispute, established that neither the present receiver nor his predecessors, knew or were charged with knowledge, that Hinsey was unfaithful, or was in any respect, unfit for bonding. As to the second point, appellee pointing to the admitted facts that, Hinsey, as the receiver's clerk, obtained $1,000 on the warrants by negotiating them in the receiver's name, and appropriated it to his own use, insists that having so obtained the money, he was accountable to the receiver for it, and having failed to so account, he and the appellant, as surety on his bond, were liable to the receiver, as for a defalcation.

We agree with appellant that, if knowing or believing that Hinsey was a defaulter, or was otherwise unworthy of trust, the receiver or his predecessors deliberately withheld that knowledge or belief from appellant, this would have constituted fraud sufficient to defeat the policy. American Surety v. Shaw, 5 Cir., 54 F.2d 550; First State Bank v. New Amsterdam Casualty Co., 5 Cir., 83 F.2d 992, and cases collected there. We agree with appellee though, that the record is wholly devoid of facts showing that plaintiff receiver, or any of his predecessors had such knowledge or belief. On the contrary, it shows that Lynch, the receiver who first employed Hinsey, and caused him to be bonded, appointed him, only after careful inquiry, and with full confidence based upon such inquiry, in his fidelity and fitness for the position. The fact that, Hinsey who had been cashier of the Bank before it was closed by the comptroller, was at that time actually short in his accounts with the Bank, a total of $3,207, was not known to Lynch, the receiver, or to the bank examiner who first took charge of the bank. For, by the artful use and manipulation of drafts, including one drawn in his own name, on his brother, he had effectively concealed his shortage. Indeed, the examiner, who had first taken charge of the bank, recommended him to the receiver, as a good and trustworthy man for the place of receiver's clerk and bookkeeper.

Questioned about his employment of Hinsey and about the unpaid drafts which were in the bank at the time of his appointment, Lynch testified that he asked Hinsey about the unpaid draft on Hinsey's brother, the only one which Hinsey had drawn in his own name, that Hinsey told him it was all right, and would be paid, and it was later paid. He further testified; that Hinsey at no time told him that he was short in his accounts; or that he had ever improperly or without authority, drawn and cashed a draft; and that he did not consider that the drawing of the draft, which was thereafter paid, just as Hinsey said it would be, reflected in any way upon Hinsey's integrity or fidelity.

As to appellee and Martin, Lynch's immediate successor as receiver, there is no proof, indeed there is no suggestion, that either of them knew or suspected anything to Hinsey's discredit.

Appellant's case then comes down to this; that Lynch originally, and his successor subsequently, if they had prosecuted more diligent inquiries, could have found out about and reported the shortage, and that this failure in diligence has resulted in discharging appellant's liability on its bond. This will not do. In United States F. & G. Co. v. Commercial National Bank, 5 Cir., 62 F.2d 718, 719, we examined and rejected a similar contention. We re-affirm what we said there. By the terms of its bond, "the insurer undertook for a price, and without inducement other than

the price, an absolute obligation to guarantee the fidelity of the bank's employees, and to insure the bank against spoliation by them. It is settled law that such a contract strictly binds the insurer to compliance with its terms, and that only breaches of conditions in it affecting the very substance of the promise, or proof that the principal knows of criminal or immoral conduct of an agent which unfits him for the position which he holds, will release the surety. American Surety Co. v. Pauly, 170 U.S. [133], 151, 18 S.Ct. 552, 42 L.Ed. 977; Guarantee Co. v. Mechanics' Sav. Bank & Trust Co., 183 U.S. 402, 22 S.Ct. 124, 46 L.Ed. 253; Fidelity & Deposit Co. v. Courtney, 186 U.S. 342, 22 S.Ct. 833, 46 L.Ed. 1193; United States F. & G. Co. v. Walker, (C.C.A. [5 Cir.]) 248 F. 42, 44; Globe Indemnity Co. v. Union & Planters' Bank & Trust Co., (C.C.A. [6 Cir.]) 27 F. 2d 496, 497; American Surety Co. v. Shaw, (C.C.A. [5 Cir.]) 54 F.2d 550; American Surety Co. v. Bankers' Sav. & Loan Ass'n, (C.C.A. [8 Cir.]) 59 F.2d 577. These authorities establish that, when a contract like this has been made by a compensated surety, its protective force cannot be frittered away by general claims like those in this case, that fair dealing required the bank to be alert to discover the infidelity of those whose fidelity the insurer had guaranteed, claims, in short, that the price to the bank for the protection it had purchased was not only the premiums, but constant, sleepless vigilance to prevent loss to the surety. They make it clear that neither negligence nor inattention, nor any failure to discover what by diligence might have been discovered, nothing, in fact, short of actual discovery by the bank of dishonesty or a positive breach of an imperative condition, will defeat claims for loss caused by that dishonesty, unless it is otherwise provided in the contract."

Appellant's defense of its second point proceeds, we think, upon a complete misapprehension of the force and effect of the undisputed facts. It argues as though, in his fraudulent procurement from the Pecos County State Bank, of the $1,000 in question, Hinsey was on a frolic of his own, had acted entirely independently of the receiver and of his position as receiver's clerk. If that assumption were correct, of course, appellant could not be held for the spoliation of the bank, for the bond was not written to protect the Pecos Bank nor to cover Hinsey's independent escapades. It was written though, to cover Hinsey's acts as receiver's representative, and its condition did cover all of those acts, particularly acts of covin and fraud, such as occurred here.[1]

Since in violation of the very terms of the bond, Hinsey failed to account for, moneys and collections that "came into his hands and under his control by virtue of his position as bookkeeper and clerk", it is not necessary to inquire whether the receiver is or is not liable to the Pecos Bank. For, it may not be doubted that Hinsey, having gotten the money in the receiver's name and for him, was obligated to pay it over to the receiver, nor that having failed to do so, he and his surety became liable on the bond.

The cases upon which appellant relies, particularly our case, First State Bank of Rock Springs v. Standard Accident Insurance Company, 5 Cir., 94 F.2d 726, are not in point. The principle controlling here, is that set out in Morris v. State, 47 Tex. 583, 584. "Unquestionably, when an officer has collected taxes for the State, under color of legal authority, or under pretense that he is authorized to do so, he will not be heard to controvert the validity of the law or authority under which he has acted, or dispute the right of the State to money thus coming into his hands."

Other cases in point are: Swan v. State, 48 Tex. 120; Webb County v. Gonzales, 69 Tex. 455, 6 S.W. 781; Tarrant County v. Rogers, 104 Tex. 224, 135 S.W. 110, 136 S.W. 255; American Indemnity Company v. Mexia Independent School District, Tex. Civ.App., 47 S.W.2d 682.

The judgment was right. It is affirmed.

---

[1] "Now, therefore, if the said Norris Bruce Hinsey shall well, truly, and faithfully perform, execute, and discharge all and singular his duties as such bookkeeper and clerk and shall correctly account for any and all moneys and collections and all other assets and properties of every kind and description that may come into his hands or under his control by virtue of said position, then this obligation to be void and of no effect, otherwise to be and remain in full force and virtue."